THE STATE OF OHIO, APPELLANT, *v.* BARKER, APPELLEE.

[Cite as *State v. Barker,* 129 Ohio St.3d 472, 2011-Ohio-4130.]

*Criminal law—Crim.R. 11—"Right to call witnesses to speak on your behalf"*
*complies with constitutional and rule requirements—Judgment reversed.*

(No. 2010-1448—Submitted June 7, 2011—Decided August 24, 2011.)

APPEAL from the Court of Appeals for Lucas County, No. L-09-1139,

2010-Ohio-3067.

_____

SYLLABUS OF THE COURT

1. A trial court complies with Crim.R. 11(C)(2)(c) when its explanation of the constitutional right to compulsory process of witnesses is described to the defendant during the plea colloquy as the "right to call witnesses to speak on your behalf."

2. An alleged ambiguity during a Crim.R. 11 oral plea colloquy may be clarified by reference to other portions of the record, including the written plea.

_____

LUNDBERG STRATTON, J.

{¶ 1} Today this court must decide whether a trial court complies with Crim.R. 11(C)(2)(c) when its explanation of the constitutional right of compulsory process of witnesses is described to the defendant by the phrase "right to call witnesses to speak on your behalf." Further, we must decide whether an alleged ambiguity during an oral plea colloquy may be clarified by reference to other portions of the record, including the written plea. Because we hold that the language employed by the trial court while addressing the defendant was a reasonable explanation of the defendant's right to compulsory process and because we hold that other portions of the record may be referenced in resolving

an alleged ambiguity during the oral colloquy, we reverse the judgment of the court of appeals.

## I. Facts

{¶ 2}  On January 7, 2009, Christopher Barker, defendant-appellee, was indicted on five counts of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A) and (B)(3), third-degree felonies. Barker initially entered a plea of not guilty, but he later withdrew that plea and entered a plea of no contest to the first three counts of the indictment.

{¶ 3}  At his plea hearing, Barker stated that he was 28 years old and could read, write, and understand English.  The court explained to Barker the level of felony to which he was pleading, the possible prison term and fine, and the Tier II sex-offender-registration and postrelease-control requirements and the consequences of their violation.  Moreover, the trial court inquired whether Barker was satisfied with his "attorney's advice, counsel, and competence," whether Barker was under the influence of drugs, alcohol, or other substances that would make it difficult for him to understand what was going on, and whether any threats or promises had been made to influence Barker's plea.  The judge also explained that the state was planning to dismiss counts four and five.  In addition, among other things, the court explained that Barker would have the right to testify at trial, the right to have the state prove his guilt beyond a reasonable doubt, and the right to appeal.

{¶ 4}  Central to the analysis today, the court made the following statement: "I do have to ask you, do you understand when you're entering a plea you're giving up your right to a jury trial or bench trial, also *giving up your right to call witnesses to speak on your behalf* or question witnesses that are speaking against you.  Do you understand that?"  (Emphasis added.)  Barker replied, "Yes, Your Honor."

2

**{¶ 5}** Barker's signed no-contest plea states: "I understand by entering this plea I give up my right to a jury trial or court trial, where I could see and have my attorney question witnesses against me, *and where I could use the power of the court to call witnesses to testify for me*." (Emphasis added.)

**{¶ 6}** After a review of the evidence, the court referenced Barker's signed plea form and asked him whether he had had the opportunity to review it with his attorney, and he said he had. The court asked him whether he had any questions, and he said he did not. Consequently, the court found that the defendant had been advised of his constitutional rights and had an understanding of the nature of the charge, the effect of his plea, and the maximum penalty involved. The court also found that Barker had made a knowing, intelligent, and voluntary waiver of his rights pursuant to Crim.R. 11 ("Pleas, rights upon plea"). The court accepted the plea and found him guilty of the three counts to which he had entered a plea.

**{¶ 7}** On appeal, Barker argued that the entry of his no-contest plea was not voluntary, intelligent, and knowing because the trial judge had failed to fully comply with the requirements of Crim.R. 11(C). The court of appeals agreed, holding that the trial court's admonition to Barker that by entering a plea he was giving up the "right to call witnesses to speak on [his] behalf" was insufficient to satisfy the constitutional mandate to compulsory process. *State v. Barker*, Lucas App. No. L-09-1139, 2010-Ohio-3067, ¶ 11, 13. Accordingly, the court of appeals reversed the judgment of the trial court. Id. at ¶ 17.

**{¶ 8}** The case is now before this court upon our acceptance of a discretionary appeal. *State v. Barker*, 127 Ohio St.3d 1448, 2010-Ohio-5762, 937 N.E.2d 1035.

## II. Analysis

*A. Sufficiency of phrase "right to call witnesses to speak on your behalf"*

3

**{¶ 9}** "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." *State v. Engle* (1996), 74 Ohio St.3d 525, 527, 660 N.E.2d 450. Crim.R. 11 was adopted in 1973 to give detailed instructions to trial courts on the procedures to follow before accepting pleas of guilty or no contest. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 7.

**{¶ 10}** Crim.R. 11(C) requires a trial judge to determine whether that criminal defendant is fully informed of his or her rights and understands the consequences of his or her guilty plea. Of particular relevance to the case at bar is Crim.R. 11(C)(2)(c), which provides:

**{¶ 11}** "In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:

**{¶ 12}** "* * *

**{¶ 13}** "Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, *to have compulsory process for obtaining witnesses in the defendant's favor*, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself." (Emphasis added.)

**{¶ 14}** This court has held that the preferred method of informing a criminal defendant of his or her constitutional rights during the plea colloquy is to use the language contained in Crim.R. 11(C). *Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 18; *State v. Ballard* (1981), 66 Ohio St.2d 473, 479, 20 O.O.3d 397, 423 N.E.2d 115. However, a trial court's failure to literally comply with Crim.R. 11(C) does not invalidate a plea agreement if the record

4

demonstrates that the trial court explained the constitutional right " '*in a manner reasonably intelligible to that defendant.*' " (Emphasis added in *Veney*.) *Veney* at ¶ 27, quoting *Ballard* at 473.

{¶ 15} In *Veney*, we reaffirmed that strict, or literal, compliance with Crim.R. 11(C)(2)(c) is required when advising the defendant of the constitutional rights he is waiving by pleading guilty or no contest. Id. at ¶ 18. Included in the list of constitutional rights is "the right to compulsory process to obtain witnesses." Id. at ¶ 19, citing *Boykin v. Alabama* (1969), 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274, and *Ballard*, paragraph one of the syllabus. The right to compulsory process of witnesses is guaranteed by the Sixth Amendment to the United States Constitution and Section 10, Article I, Ohio Constitution. However, we reaffirmed that the " 'failure to [literally comply] will not necessarily invalidate a plea. The underlying purpose, from the defendant's perspective, of Crim.R. 11(C) is to convey to the defendant certain information so that he can make a voluntary and intelligent decision whether to plead guilty.' " Id., quoting *Ballard* at 479-480. This is because "a trial court can still convey the requisite information on constitutional rights to the defendant even when the court does not provide a word-for-word recitation of the criminal rule, so long as the trial court actually explains the rights to the defendant." *Veney* at ¶ 27.

{¶ 16} In the case at bar, the trial court described Barker's constitutional right to compulsory process as the "right to call witnesses to speak on your behalf." The court of appeals held that although a court does not necessarily have to employ the term "compulsory process" during the Crim.R. 11 oral colloquy, "it must use some equivalent term such as the defendant has the 'power to force,' 'subpoena,' use the 'power of the court to force,' or 'compel' a witness to appear and testify on a defendant's behalf." *Barker*, 2010-Ohio-3067, at ¶ 13. The court held that the explanation that the defendant had the "ability 'to call witnesses' simply does not satisfy the constitutional mandate." Id. We disagree.

**{¶ 17}** A review of legal and standard dictionaries reveals that "to call" commonly means "to summon." Black's Law Dictionary (9th Ed.2009) 232 defines "call" as "[t]o summon." So does Webster's Third New International Dictionary (1986) 318. The Oxford English Dictionary (2d Ed.1989) 786 defines "call" as to "summon with a shout, or by a call; *hence* to summon, cite; to command or request the attendance of." The Random House Dictionary of the English Language (2d Ed.1987) 297 defines "call" as "to command or request to come; summon."

**{¶ 18}** Using "call" to mean "to compel someone's appearance" is a commonly understood term in everyday parlance. For example, citizens may be "called" for jury duty. Members of the military reserves may be "called up" for active duty. Professionals may be "on call" with respect to their jobs. The word "call" in everyday usage clearly conveys the idea that one is required to appear or to perform.

**{¶ 19}** The dissent in *State v. Cummings*, 107 Ohio St.3d 1206, 2005-Ohio-6506, 839 N.E.2d 27, ¶ 14, highlighted this issue: "[T]o 'call' means to 'summon.' Garner, Black's Law Dictionary (8th Ed.2004) 217. * * * I believe that the trial court's words conveyed an even clearer message than does a recitation of the right to 'have compulsory process for obtaining witnesses.' Crim.R. 11(C)(2)(c). The words 'compulsory process,' 'subpoena,' and 'compel witnesses' have legal significance and implications that a defendant may not know or understand." (Lundberg Stratton, J., dissenting from the decision to dismiss the case as having been improvidently accepted.)

**{¶ 20}** The use of common, everyday words, including "call," instead of a rote recitation of legal terminology, can assist the defendant in understanding the rights forfeited by entry of a plea. Thus, we hold that the language employed by the trial court in informing the defendant that he had the "right to call witnesses to speak on [his] behalf" was a reasonably intelligible explanation to the defendant

of his constitutional right to compulsory process and allowed the defendant to make a voluntary and intelligent decision whether to plead no contest.

*B. Consequences of failure to strictly comply with Crim.R. 11(C)(2)(c)*

{¶ 21} Barker's change-of-plea form states: "I understand by entering this plea I give up my right to a jury trial or court trial, where I could see and have my attorney question witnesses against me, and where I could use the power of the court to call witnesses to testify for me." During the plea colloquy, the trial court asked Barker whether he had reviewed the change-of-plea form with his attorney, and Barker stated that he had. The court then asked: "Do you have any questions of the Court before I proceed?" Barker stated that he did not have any questions.

{¶ 22} In addition to invalidating Barker's plea based on the alleged insufficiency of the language employed to describe the right to compulsory process, the court of appeals cited *Veney*, which states, " '[T]he court cannot simply rely on other sources to convey these rights' to the defendant." *Barker*, 2010-Ohio-3067, ¶ 15, quoting *Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 29. The court held that the plea agreement was another source and therefore could not be employed to satisfy the constitutional mandate in Crim.R. 11(C)(2)(c). We disagree.

{¶ 23} In *Veney*, this court held, "Although the trial court may vary slightly from the literal wording of the rule in the colloquy, the court cannot simply rely on other sources to convey those rights to the defendant." Id. at ¶ 29. However, *Veney* can be distinguished on its facts. The court noted that in Veney's case, "it [was] undisputed that the trial court plainly failed to orally inform Veney of his constitutional right to require the state to prove his guilt beyond a reasonable doubt." Id. at ¶ 30. Therefore, because the trial court had completely "failed to orally inform" the defendant of the right in question, under the facts of *Veney*, the court could not "simply rely on other sources to convey these rights." Id. at ¶ 29.

**{¶ 24}** In *Ballard*, as here, the trial court did not "simply" rely on the written plea. Rather, the trial court engaged in a full plea colloquy with the defendant and addressed the right of compulsory process of witnesses. Thus, when a trial court addresses all the constitutional rights in the oral colloquy, a reviewing court should be permitted to consider additional record evidence to reconcile any alleged ambiguity in it. We further note that this interpretation comports with federal law, which does not require automatic vacation of a plea when a judge fails to inform a defendant of a *Boykin* right. *Boykin*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274. See *United States v. Vonn* (2002), 535 U.S. 55, 59, 122 S.Ct. 1043, 152 L.Ed.2d 90.

**{¶ 25}** We hold that *Veney* did not reject the *Ballard* approach of considering the totality of the circumstances, but instead is limited to the situation where a trial court omits any discussion of a constitutional right in the oral colloquy. Thus, we hold that an alleged ambiguity during a Crim.R. 11 oral plea colloquy may be clarified by reference to other portions of the record, including the written plea, in determining whether the defendant was fully informed of the right in question.

**{¶ 26}** Following the totality-of-the-circumstances test of *Ballard*, we find it clear that Barker knowingly, intelligently, and voluntarily waived his right to compulsory process, and his plea should not have been invalidated. Barker was adequately informed of his right to compulsory process via the language employed. In addition, Barker was represented by counsel, and he signed a written change-of-plea form stating that he understood that he was giving up the right to use the power of the court to call witnesses to testify for him.

### III. Conclusion

**{¶ 27}** We hold that a trial court complies with Crim.R. 11(C)(2)(c) when its explanation of the constitutional right to compulsory process of witnesses is described to the defendant during the plea colloquy as the "right to call witnesses

to speak on your behalf." We further hold that an alleged ambiguity during the plea colloquy may be clarified by reference to other portions of the record, including the written plea. Accordingly, we reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

Judgment reversed

and trial court judgment reinstated.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Julia R. Bates, Lucas County Prosecuting Attorney, and Evy M. Jarrett, Assistant Prosecuting Attorney, for appellant.

Stephen D. Long, for appellee.

Michael DeWine, Attorney General, Alexandra T. Schimmer, Solicitor General, and Erick D. Gale and Michael J. Schuler, Assistant Attorneys General, urging reversal for amicus curiae, Ohio Attorney General Michael DeWine.

_____