[Cite as *State v. Bennett*, 2012-Ohio-3664.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | C.A. No. 26241 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JOSEPH L. BENNETT | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 11 04 0894 |

DECISION AND JOURNAL ENTRY

Dated: August 15, 2012

DICKINSON, Judge.

INTRODUCTION

{¶1}   Joseph Bennett pleaded guilty to several charges stemming from leading police on a high-speed chase through Akron and, several days later, being caught in possession of narcotics inside a detention facility.  The trial court sentenced him to 12 years in prison, and this Court granted his motion for delayed appeal.  We dismiss Mr. Bennett's third assignment of error due to lack of jurisdiction.  We affirm the judgment of the trial court because it exercised proper discretion in sentencing Mr. Bennett, Mr. Bennett knowingly, intelligently, and voluntarily chose to waive his right to use compulsory process to obtain witnesses in his favor and his right to refuse to testify against himself at trial, and he did not show that his lawyer was ineffective.

BACKGROUND

{¶2}   Mr. Bennett pleaded guilty to leading police on a high-speed chase on Arlington Road and throwing something, possibly drugs, out the window along the way.  He was charged

with failure to comply with an order or signal of a police officer and tampering with evidence based on that incident. According to the indictment, he was also charged with three counts stemming from events that occurred five days after the chase. Those charges included prohibition of conveyance of weapons, drugs of abuse, or intoxicating liquor onto the grounds of a specified governmental facility, aggravated possession of drugs, and tampering with evidence. There are few details about the factual circumstances of the crimes in the record that has been transmitted to this Court. The parties seem to agree, however, that Mr. Bennett threw something from the car window while fleeing from police and that he was later found in possession of methamphetamine inside a detention facility. They also seem to agree that a police officer was seriously injured by a drunk driver while searching for the item that Mr. Bennett threw from the car window during the chase.

{¶3} The State agreed to dismiss the tampering with evidence charge stemming from the incident inside the detention facility and to amend the aggravated possession of drugs charge from a felony of the third degree to a felony of the fifth degree. Mr. Bennett then pleaded guilty to the remaining four charges as amended, including three third-degree felonies and one fifth-degree felony. More than a month after the plea hearing, the trial court sentenced Mr. Bennett to 12 years in prison. Within a month of receiving his sentence, Mr. Bennett moved the trial court for leave to withdraw his guilty pleas. The trial court denied his motion without a hearing. He has appealed.

PLEA COLLOQUY

{¶4} Mr. Bennett's second assignment of error is that the trial court should not have accepted his guilty plea because it did not properly notify him that, by pleading guilty, he would be waiving his right to subpoena witnesses to testify on his behalf and that he could not be

compelled to testify at trial. The State has argued that the trial court's advice was sufficient despite the fact that the court did not quote verbatim from Rule 11 of the Ohio Rules of Criminal Procedure.

{¶5} "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." *State v. Barker*, 129 Ohio St. 3d 472, 2011–Ohio–4130, ¶ 9 (quoting *State v. Engle*, 74 Ohio St. 3d 525, 527 (1996)). Under Rule 11(C)(2)(c) of the Ohio Rules of Criminal Procedure, before accepting a guilty plea in a felony case, a trial court must inform the defendant and determine that he understands that, by pleading guilty, he is waiving certain constitutional rights. Specifically, the court must advise the defendant that, by pleading guilty, he "is waiving the rights to jury trial, to confront witnesses against him . . . , to have compulsory process for obtaining witnesses in [his] favor, and to require the state to prove [his] guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself[.]" Crim. R. 11(C)(2)(c).

{¶6} According to the Ohio Supreme Court, the "preferred method" is for the trial court to use the language of the rule, but it has held that "a trial court's failure to literally comply" with Criminal Rule 11(C) "does not invalidate a plea agreement if the record demonstrates that the trial court explained the constitutional right '*in a manner reasonably intelligible to that defendant.*'" *State v. Barker*, 129 Ohio St. 3d 472, 2011-Ohio-4130, ¶ 14 (quoting *State v. Veney*, 120 Ohio St. 3d 176, 2008-Ohio-5200, ¶ 27). A trial court may fulfill the purpose of the rule, that is, it may convey sufficient information to the defendant so that he

can make a voluntary and intelligent decision about whether to plead guilty, without reading the rule to the defendant verbatim. *Id.* at ¶ 15.

{¶7} In this case, before the trial court addressed Mr. Bennett, his lawyer told the court that Mr. Bennett had "reviewed the plea form" and that she had "gone over his constitutional rights" with him. The trial court advised Mr. Bennett that, by changing his pleas to guilty, he would "give up [his] right to a jury trial, give up [his] right to making the prosecutor prove all the charges against [him] beyond a reasonable doubt, give up the right to have [his lawyer] subpoena and cross-examine witnesses for [him], give up the right to testify or not testify in [his] own defense, and . . . give up the right to then appeal that [he] would have had if we'd gone to trial . . . . ."

{¶8} The trial court also acknowledged that Mr. Bennett had signed a written plea form and asked him whether his lawyer had "go[ne] over it with [him] to [his] satisfaction." Mr. Bennett answered, "[y]es." The written plea form that Mr. Bennett signed on August 17, 2011, provided that "I have been informed by my attorney and by the Judge that by pleading guilty, I waive the following Constitutional Rights, and I understand these rights and it is my intention to waive them: (a) My right to a jury trial[;] (b) My right to confront and cross-examine the witnesses against me[;] (c) My right to have compulsory process, that is the right to subpoena witnesses to court to testify in my favor[;] (d) My right to require the State to prove my guilt beyond a reasonable doubt at trial at which I could not be compelled to testify against myself."

{¶9} The Ohio Supreme Court has held that "when a trial court addresses all the constitutional rights in the oral colloquy, a reviewing court should be permitted to consider additional record evidence to reconcile any alleged ambiguity in it." *State v. Barker*, 129 Ohio St. 3d 472, 2011–Ohio–4130, ¶ 23-24 (distinguishing *State v. Veney*, 120 Ohio St. 3d 176, 2008-

Ohio-5200, on basis that, in *Veney*, the trial court had completely omitted from the plea colloquy any mention of the defendant's constitutional right to require the state to prove his guilt beyond a reasonable doubt). In Mr. Bennett's case, the trial court told him that he would be giving up the right to have his lawyer subpoena witnesses for him and it told him that he would be giving up the right to testify or not testify in his own defense. Therefore, under *Barker*, we are permitted to consider whether additional evidence in the record clarifies any alleged ambiguity in those statements.

**{¶10}** In regard to the constitutional right "to have compulsory process for obtaining witnesses in [his] favor," any alleged ambiguity in the trial court's advice was clarified by the written plea form Mr. Bennett acknowledged signing and discussing with his lawyer. Crim. R. 11(C)(2)(c). The trial court warned Mr. Bennett that he would be giving up his "right to have [his lawyer] subpoena . . . witnesses for [him]." Criminal Rule 11(C)(2)(c) does not use the word "subpoena." The Rule uses the term "compulsory process." Although "subpoena" is not a common word, it is likely more comprehensible to a non-lawyer than the term "compulsory process." *See State v. Barker*, 129 Ohio St. 3d 472, 2011–Ohio–4130, ¶ 20 (explaining that the use of more common words rather than a rote recitation of the legal terminology of the rule "can assist the defendant in understanding the rights forfeited by entry of a plea"). We believe that the trial court's statement about Mr. Bennett's lawyer being able to "subpoena" witnesses "for" him conveyed sufficient information to allow Mr. Bennett to make a voluntary and intelligent decision about whether to plead guilty. *See Barker*, 2011-Ohio-4130, at ¶ 15. Even if this Court had determined that the trial court's statement created some ambiguity, it would have been clarified by the written plea form that listed the "right to have compulsory process" and explained that right as "the right to subpoena witnesses to court to testify in my favor." Under

the totality of the circumstances, Mr. Bennett was adequately informed of his right to compulsory process and he knowingly, intelligently, and voluntarily waived that right.

{¶11} Mr. Bennett has also argued that he was not adequately informed that, if he went to trial, he could not be compelled to take the witness stand. During the colloquy, the trial court told Mr. Bennett that, by pleading guilty, he would be giving up his right "to testify or not testify in [his] own defense." The written plea form that Mr. Bennett signed informed him that, by pleading guilty, he was giving up his "right to require the State to prove [his] guilt beyond a reasonable doubt at a trial at which [he] could not be compelled to testify against [him]self." The form also provided that, "I have either read this Written Plea of Guilty or it has been read to me and I understand it, and I wish to waive all of the rights set forth herein and voluntarily plead GUILTY to the charge(s) set forth above."

{¶12} Criminal Rule 11 provides that, by pleading guilty, a defendant waives his right "to require the state to prove [his] guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself[.]" Crim. R. 11(C)(2)(c). As the language of the written plea form tracked the language of Criminal Rule 11, any alleged ambiguity in the trial court's statement to Mr. Bennett about his right to choose not to testify was sufficiently clarified by the form. Under the totality of the circumstances, Mr. Bennett was adequately informed of his right to refuse to testify against himself at trial and he knowingly, intelligently, and voluntarily waived that right. *See State v. Coleman*, 9th Dist. No. 26008, 2012-Ohio-1712, ¶ 11 (approving trial court's use of identical language). Mr. Bennett's second assignment of error is overruled because he knowingly, intelligently, and voluntarily chose to waive his right to use compulsory process to obtain witnesses in his favor and his right to refuse to testify against himself at trial.

MOTION TO WITHDRAW GUILTY PLEA

{¶13} Mr. Bennett's third assignment of error is that the trial court incorrectly denied his post-sentence motion to withdraw his guilty plea without holding a hearing. The State has argued that this Court lacks jurisdiction to consider this assignment of error because the motion to file delayed appeal was limited to the judgment of conviction attached to Mr. Bennett's notice of appeal.

{¶14} On December 30, 2011, Mr. Bennett filed a notice of appeal from the trial court's judgment entered September 21, 2011. He did not attach to his notice of appeal the October 26, 2011, entry denying his motion to vacate his guilty plea nor did he refer to that entry in the body of his notice. At the same time, he moved this Court for leave to file a delayed appeal. The motion to file a delayed appeal did not include any reference to the trial court's ruling on his post-sentence motion to withdraw his guilty plea.

{¶15} A trial court's entry imposing sentence in a criminal case is a final, appealable order. *State v. Lester*, 130 Ohio St. 3d 303, 2011-Ohio-5204, paragraph one of the syllabus. A denial of a post-sentence motion to withdraw a guilty plea is also a final, appealable order. *State v. Kerns*, 9th Dist. No. 11CA0051–M, 2011–Ohio–6788, ¶ 7. Under Rule 3(D) of the Ohio Rules of Appellate Procedure, a "notice of appeal . . . shall designate the judgment, order or part thereof appealed from[.]"

{¶16} In this case, the only judgment Mr. Bennett designated in his notice of appeal was his sentencing entry. If he desired to appeal the denial of his post-sentence motion to withdraw his guilty plea, he should have either timely filed a notice of appeal designating that judgment under Rule 3(D) of the Ohio Rules of Appellate Procedure or moved this Court for leave to file a delayed appeal from that judgment. *See* App. R. 4(A); App. R. 5(A). In the absence of either a

timely filed notice of appeal or motion to file a delayed appeal from the October 26, 2011, entry denying the post-sentence motion to withdraw his guilty plea, this Court lacks jurisdiction to consider this assignment of error. *See State v. Wilson*, 9th Dist. No. 26238, 2012-Ohio-2890, ¶ 4-5. Mr. Bennett's third assignment of error is dismissed.

SENTENCING

**{¶17}** Mr. Bennett's first assignment of error is that the trial court considered irrelevant and unconstitutional factors in sentencing him, violating his statutory and constitutional rights. He has argued that he was prejudiced by the trial court's consideration of several factors, including his membership in a white supremacist organization, his display of certain tattoos associated with that membership, and the fact that a police officer was seriously injured while searching for evidence that Mr. Bennett had thrown from his car while fleeing from police.

**{¶18}** In *State v. Kalish*, 120 Ohio St. 3d 23, 2008–Ohio–4912, ¶ 4, a plurality of the Ohio Supreme Court determined that, in light of *State v. Foster*, 109 Ohio St. 3d 1, 2006–Ohio–856, when appellate courts review criminal sentences, they must follow a "two-step approach." The first step is to determine whether the sentence is contrary to law. *Kalish*, 2008–Ohio–4912, at ¶ 4. The second step is to determine whether the court exercised proper discretion in imposing the term of imprisonment. *Id.* at ¶ 26. In this case, the defendant has not argued that any part of his sentence is contrary to law and a review of the record reveals that his sentence falls within the statutorily permissible range for his crimes. R.C. 2929.14(A)(3), (5), effective Apr. 7, 2009. Therefore, the question is whether the trial court exercised proper discretion in imposing Mr. Bennett's sentence.

Membership in the Aryan Brotherhood

{¶19}  "The United States Supreme Court has recognized that even a sentence within the limits of a state's sentencing laws may violate due process if the sentencing proceedings are fundamentally unfair."  *State v. Arnett*, 88 Ohio St. 3d 208, 217 (2000) (citing *Gardner v. Florida*, 430 U.S. 349, 358 (1977)).  Thus, the Supreme Court has observed that a sentencing court may not base its decision on "factors that are constitutionally impermissible or totally irrelevant to the sentencing process, such as for example the race, religion, or political affiliation of the defendant."  *Zant v. Stephens*, 462 U.S. 862, 885 (1983).  Mr. Bennett has relied on *Dawson v. Delaware*, 503 U.S. 159 (1992), to support his proposition that the trial court's consideration, for the purposes of sentencing, of evidence that Mr. Bennett was a member of the Aryan Brotherhood violated his First and Fourth Amendment rights.

{¶20}  In *Dawson v. Delaware*, 503 U.S. 159 (1992), the United States Supreme Court held that the defendant's First Amendment rights were violated by the admission into evidence at a capital sentencing hearing of a narrow stipulation regarding Mr. Dawson's membership in the Aryan Brotherhood.  The stipulation described the group as "a white racist prison gang that began in the 1960's in California . . . .  Separate gangs calling themselves the Aryan Brotherhood now exist in many state prisons including Delaware."  *Id.* at 162.  In that case, the Court determined that the receipt of the stipulation regarding his membership was constitutional error because the narrow scope of the stipulation left the evidence "totally without relevance to . . . [the] sentencing proceeding."  *Id.* at 165.  Even if the stipulation had been written in a way that provided evidence that the Delaware chapter to which Mr. Dawson belonged held racist beliefs, those beliefs had no relevance to the sentencing proceeding because both the defendant and the murder victim were white.  *Id.* at 166.  The Court, however, refused to "erect a per se barrier to

the admission of evidence concerning one's beliefs and associations at sentencing simply because those beliefs and associations are protected by the First Amendment." *Id.* at 165. The Court in *Dawson* pointed out that such evidence could be admissible to show, among other things, the bias of a witness or the likelihood that the defendant poses a future danger to society. *Id.* at 164-66. The Court explained that the State "might have avoided this problem if it had presented evidence showing more than mere abstract beliefs [of the defendant]." *Id.* at 167.

{¶21} In Ohio, the sentencing court in a felony case is required to "be guided by the overriding purposes of felony sentencing. . . . [including] to protect the public from future crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." R.C. 2929.11(A), effective July 1, 1996. "A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing . . . commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B), effective July 1, 1996.

{¶22} In this case, there is nothing in the record to indicate that race played a role in the crime. The fact that racism was not involved in the crime, however, does not mean that the trial court necessarily violated Mr. Bennett's constitutional rights by considering for purposes of sentencing his membership in the Aryan Brotherhood. Such evidence may have been relevant at sentencing to prove the likelihood of recidivism if properly supported by the proper evidence about the Aryan Brotherhood. The Court in *Dawson* explained that one's membership in the Aryan Brotherhood could not be used to enhance a penalty simply because the abstract beliefs

espoused by the group are generally considered to be morally reprehensible. *Dawson v. Delaware*, 503 U.S. 159, 167 (1992). The evidence, however, can be used to the extent that it tends to show that the offender is likely to reoffend, so that an increased penalty may be necessary to achieve the purpose of protecting the public from future crime. *See* R.C. 2929.11(A), effective July 1, 1996.

{¶23} "At the sentencing hearing, the court, before imposing sentence, shall consider the record, any information presented at the hearing by any person pursuant to division (A) of this section, and, if one was prepared, the presentence investigation report . . . ." R.C. 2929.19(B)(1), effective Apr. 7, 2009. It is apparent from the transcript of the sentencing hearing that a presentence investigation report was prepared in this case, but it does not appear in the record before this Court.

{¶24} If a presentence investigation report is prepared, "there is a presumption that the trial court utilized it in imposing a sentence." *State v. Cox*, 9th Dist. No. 19773, 2000 WL 372317, *2 (Apr. 12, 2000) (citing *State v. O'Neal*, 9th Dist. No. 19255, 1999 WL 771917, *5 (Sept. 29, 1999)). The trial court mentioned at the sentencing hearing that the presentence investigation report described "Mr. Bennett's avowed and apparently proud membership in the Aryan Brotherhood" and the fact that he is "a captain" in that organization. Beyond that, it is impossible to discern what else the presentence investigation report provided on that topic because the report is not included in the record. "This Court has repeatedly held that it is the duty of the appellant to ensure that the record on appeal is complete." *Riggle v. McFadden*, 9th Dist. No. 08CA0007, 2008–Ohio–5656, ¶ 5 (quoting *Lunato v. Stevens Painton Corp.*, 9th Dist. No. 08CA009318, 2008–Ohio–3206, ¶ 11)). Without the presentence investigation report, we are unable to properly review the trial court's sentencing decision, so we must presume the

validity of the trial court proceedings. *See City of Cuyahoga Falls v. James*, 9th Dist. No. 21119, 2003-Ohio-531, ¶ 9 (quoting *Knapp v. Edwards Labs*., 61 Ohio St. 2d 197, 199 (1980)).

Unintended Consequences of the Criminal Behavior

**{¶25}** Mr. Bennett has also argued that the trial court incorrectly considered the undisputed fact that a police officer was severely injured by a drunk driver while searching for the item that Mr. Bennett threw from the window of his car while leading police on a high-speed chase through Akron neighborhoods. He has cited *State v. Dykas*, 185 Ohio App. 3d 763, 2010-Ohio-359, ¶ 24 (8th Dist.), for the proposition that the trial court should not have considered the officer's injury because it was not reasonably foreseeable.

**{¶26}** "It is not necessary that the defendant 'be in a position to foresee the precise consequence of his conduct; only that the consequence be foreseeable in the sense that what actually transpired was natural and logical in that it was within the scope of the risk created by his conduct.'" *State v. Dykas*, 185 Ohio App. 3d 763, 2010-Ohio-359, ¶ 24 (quoting *State v. Losey*, 23 Ohio App. 3d 93, 96 (10th Dist. 1985)). Mr. Bennett has argued that the officer's injury was caused by the unforeseeable intervening cause of a drunk driver, which should "absolve [Mr. Bennett] of criminal liability." *Id.* at ¶ 25. Presumably the missing presentence investigation report contains some details about how the officer was injured that would shed some light on the foreseeability question.

**{¶27}** Regardless of those details, however, Mr. Bennett has not made a constitutional argument in regard to the court's consideration of the officer's injury. The only argument is that it should not have been considered because it was not a relevant factor under Section 2929.12 of the Ohio Revised Code. It makes no difference in this matter whether Mr. Bennett could have been held criminally liable for the officer's injury because he was not charged with causing it.

The circumstances of the injury may prove to make it more or less relevant to the crimes Mr. Bennett admitted committing, depending on how attenuated the causation. In any event, in the absence of any details, we cannot say that the injury to the officer was, as a matter of law, "totally irrelevant" to the sentencing considerations of the trial court. *See Zant v. Stephens*, 462 U.S. 862, 885 (1983).

{¶28} The trial court warned Mr. Bennett at the plea hearing that it wanted a presentence investigation completed primarily for the purpose of uncovering the circumstances of his failure to comply with an order of a police officer. The court made it clear that those facts would "weigh heavily in the sentencing" because of the danger the high-speed chase posed to others. At the sentencing hearing, the State presented information, presumably from the presentence investigation report, indicating that Mr. Bennett had had "two attempts" at community control and that he had been "sent back to prison on both of those." Mr. Bennett stated on the record that he had spent eight years in prison. Although Mr. Bennett was just 31 years old at the time, the State described his criminal record as spanning almost two decades and including two prior charges of failure to comply with an order or signal of a police officer. Mr. Bennett's lawyer admitted that Mr. Bennett had sped away from the police at high rates of speed and did not object to the State's assertion that he had led police on a chase at over 100 miles per hour on Arlington Road, nearly causing several collisions along the way. The trial court explained that "the danger [Mr. Bennett] posed to the community was monumental, not just to the officer, but to lots of other people."

{¶29} Based on these considerations, the trial court sentenced Mr. Bennett to the maximum sentence on his pleas of guilty to failure to comply, aggravated possession of drugs, and tampering with evidence. The court sentenced him to less than half of the maximum

permissible sentence for prohibition of conveyance of weapons, drugs of abuse, or intoxicating liquor onto the grounds of a specified governmental facility. The trial court exercised proper discretion in sentencing Mr. Bennett, and his first assignment of error is overruled.

INEFFECTIVE ASSISTANCE OF COUNSEL

{¶30} Mr. Bennett's fourth assignment of error is that his lawyer was ineffective for failing to object to the consideration of irrelevant and prejudicial evidence at the sentencing hearing, failing to object or notify the Court of the ways in which the court's advice at the plea colloquy failed to conform to Rule 11 of the Ohio Rules of Criminal Procedure, and failing to move to withdraw Mr. Bennett's guilty plea before the court sentenced him. To establish that his lawyer was ineffective, Mr. Bennett "must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 119 Ohio St. 3d 118, 2008–Ohio–3426, ¶ 204 (citing *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984); *State v. Bradley*, 42 Ohio St. 3d 136, paragraph two of the syllabus (1989)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

{¶31} Mr. Bennett's first argument is that his lawyer was ineffective for failing to object, after his guilty pleas were accepted, to the consideration of evidence regarding his membership in the Aryan Brotherhood, his "Aryan Brother tattoos," and the fact that a police officer was seriously injured by a drunk driver while searching for the item Mr. Bennett threw from the car window while fleeing from police. Having reviewed the record in regard to the first

assignment of error, this Court has determined that the trial court exercised proper discretion in considering those issues in sentencing Mr. Bennett. As there was no error in the trial court's consideration of those issues, Mr. Bennett cannot show that his lawyer was ineffective for failing to object.

{¶32} Mr. Bennett's next argument is that his lawyer was ineffective for failing to object or notify the Court of the ways in which the court's advice at the plea colloquy failed to conform to Rule 11 of the Ohio Rules of Criminal Procedure. In analyzing Mr. Bennett's arguments in regard to his second assignment of error, we determined that the trial court properly advised him of the rights he was forfeiting by entering a plea of guilty. Therefore, he cannot show that his lawyer was ineffective for not objecting or notifying the trial court of any problems with its advice during the plea colloquy.

{¶33} Mr. Bennett's final argument is that his lawyer was ineffective for failing to move to withdraw Mr. Bennett's guilty pleas before the court sentenced him. According to his brief, Mr. Bennett "was hesitant to go through with the sentencing hearing and expressed a desire to withdraw his guilty plea." He has argued that his lawyer fell below an objective standard of reasonable representation by failing to ensure that Mr. Bennett wished to proceed to sentencing rather than move to withdraw his guilty pleas before the sentencing hearing.

{¶34} There is no evidence that Mr. Bennett wanted to withdraw his pleas at any time between the August 17 plea hearing and the September 21 sentencing hearing. After the sentencing hearing, in the motion to withdraw the guilty pleas, Mr. Bennett's lawyer indicated that, "[j]ust prior to sentencing, Mr. Bennett stated that he wanted to withdraw his plea." His lawyer also indicated, however, that she immediately advised him that, if he wanted to withdraw his pleas, he needed to do so before sentencing while such motions are freely granted. Despite

that admonition, Mr. Bennett decided to go forward with the sentencing hearing. A review of the transcript of the sentencing hearing reveals that Mr. Bennett gave the trial court no indication that he was not completely comfortable with the court pronouncing sentence at that time. According to the record, he did not decide to withdraw his pleas until after he learned what the sentence would be. Without evidence in the record indicating that Mr. Bennett expressed a desire to withdraw his pleas before sentencing, this Court cannot determine whether his trial lawyer's failure to move to withdraw the pleas before sentencing fell below an objective standard of reasonable representation. *See Strickland v. Washington*, 466 U.S. 668, 691 (1984). The only indication in the record appears after sentencing and is in the form of a motion. Even if we considered that evidence, it does not support Mr. Bennett's argument that his lawyer's performance was deficient in any way. Mr. Bennett's fourth assignment of error is overruled.

CONCLUSION

**{¶35}** Mr. Bennett's first assignment of error is overruled because, based on our review of the record, the trial court exercised proper discretion in sentencing Mr. Bennett. His second assignment of error is overruled because the trial court properly advised him at his plea hearing and he knowingly, intelligently, and voluntarily chose to waive his right to use compulsory process to obtain witnesses in his favor and his right to refuse to testify against himself at trial. His third assignment of error is dismissed because this Court lacks jurisdiction to consider it. His fourth assignment of error is overruled because he did not show that his lawyer was ineffective. The judgment of the Summit County Common Pleas Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CLAIR E. DICKINSON
FOR THE COURT

WHITMORE, P. J.
CARR, J.
CONCUR.


APPEARANCES:

ADAM VAN HO, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.