[Cite as *State v. Adams*, 2016-Ohio-2757.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 15CA44 |
| Plaintiff-Appellee, | : | |
| v. | : | <u>DECISION AND</u><br><u>JUDGMENT ENTRY</u> |
| ROGER A. ADAMS, | : | |
| Defendant-Appellant. | : | **RELEASED: 4/27/2016** |

<u>APPEARANCES</u>:

Angela Wilson Miller, Jupiter, Florida, for appellant.

Kevin Rings, Washington County Prosecuting Attorney, and Nicole Tipton Coil, Washington County Assistant Prosecuting Attorney, Marietta, Ohio, for appellee.

Harsha, J.

{¶1}   The State indicted Roger A. Adams on theft, forgery and two counts of assault. In exchange for Adams's guilty plea to forgery and one count of assault, the state dismissed the other two charges. After the court sentenced him to prison and ordered restitution, Adams appealed, raising two assignments of error.

{¶2}    First he argues that his guilty plea was obtained in violation of his state and federal constitutional rights and Crim.R. 11(C). He asserts that at the plea hearing, the trial court failed to comply with Crim.R. 11(C)(2)(c) because the trial court did not advise him that he was waiving his rights against self-incrimination, to a jury trial, to confront witnesses against him, to have compulsory process for obtaining favorable witnesses, and to require the state to prove guilt beyond a reasonable doubt. The state argues that a review of the totality of the circumstances, including the language in the written guilty plea and the trial court's statements at the sentencing hearing concerning

the constitutional rights set forth in the written plea, shows that the trial court substantially complied with Crim.R. 11(C)(2)(c), even if it did not give an oral recitation of the language contained in it.  However, Crim.R. 11(C)(2)(c) requires strict compliance. The trial court failed to explain the constitutional rights set forth in Crim.R. 11(C)(2)(c) and instead relied exclusively on Adams's defense counsel to do so through the use of the written guilty plea.  As a result, the trial court failed to strictly comply with the rule and its constitutional and procedural safeguards.

{¶3}    Next, Adams argues that his trial counsel rendered ineffective assistance of counsel by failing to object to the order that he pay restitution in the amount of $100 to the elderly female victim he struck. Because we reverse Adams's conviction based upon the trial court's failure to comply with Crim.R. 11(C)(2)(c), his second assignment of error concerning the court's order of restitution is moot and we need not address it. *See* App.R. 12(A)(1)(c).

## I. ASSIGNMENTS OF ERROR

{¶4}    Adams raises two assignments of error:

1.    APPELLANT'S PLEA WAS OBTAINED IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I SECTION 10 OF THE OHIO CONSTITUTION AND CRIM.R. 11(C).

2.    TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE IN VIOLATION OF ADAMS' RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND OHIO CONSTITUTION ARTICLE I, §§ 5, 10, AND 16. IN THE ALTERNATIVE, ADAMS ARGUES THAT THE RESTITUTION AWARD TO [THE VICTIM] AMOUNTED TO PLAIN ERROR. CRIM. R. 52(B).

## II. LAW AND ANALYSIS

### A.  Validity of Guilty Plea

## 1. Crim. R. 11(C) and Standard of Review

**{¶5}**   In his first assignment of error Adams contends that his guilty plea was obtained in violation of his federal and state constitutional rights and the requirements of Crim.R. 11 because the trial court did not strictly comply with Crim.R. 11(C)(2)(c).

**{¶6}**   " 'When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution.' " *State v. Veney*, 120 Ohio St.3d 176, 2008–Ohio–5200, 897 N.E.2d 621, ¶ 7, quoting *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). "Crim.R. 11(C) governs the process that a trial court must use before accepting a felony plea of guilty or no contest." *Veney* at ¶ 8. Before accepting a guilty plea in a felony case a trial court must address the defendant personally and determine that "the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing." Crim.R. 11(C)(2)(a). The court must also inform the defendant of both the constitutional and nonconstitutional rights he is waiving and determine that he "understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence." Crim.R. 11(C)(2)(b). Finally, the court must both inform and determine that the defendant understands that he "is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the

defendant cannot be compelled to testify against himself or herself." Crim.R.

11(C)(2)(c).

{¶7}    When we determine whether a guilty [or no-contest] plea was entered

knowingly, intelligently, and voluntarily, we conduct a de novo review of the record to

ensure that the trial court complied with the constitutional and procedural safeguards.

*State v. Moore*, 4th Dist. Adams No. 13CA965, 2014–Ohio–3024, ¶ 13; *see also State*

*v. Kerns*, 4th Dist. Highland No. 15CA6, 2016-Ohio-63, ¶ 27-31.

2. Constitutional Rights Enumerated in Crim. R. 11(C)(2)(c)

{¶8}    Adams contends that the trial court erred by failing to inform him of any of

the constitutional rights set forth in Crim.R. 11(C)(2)(c). Adams claims that the trial

court's reference to the constitutional rights set forth in the written plea agreement fails

to comply with the rule as interpreted in *Veney, supra*.   The written guilty plea contains

the following recitation of the constitutional rights enumerated in Crim.R. 11(C)(2)(c):

> I understand by pleading guilty I give up my right to a jury trial or court trial,
> where I could see and have my attorney question witnesses against me, and
> where I could use the subpoena power of the Court to call witnesses to testify for
> me. I know at trial I would not have to take the witness stand and could not be
> force to testify against myself and that no one could comment if I chose not to
> testify. I understand I waive my right to have the prosecutor prove my guilt
> beyond a reasonable doubt on every element of each charge.

{¶9}    At the sentencing hearing, the trial court engaged in the following

dialogue:

> COURT: Now, Attorney Fowler, did you go over this written plea of guilty with Mr.
> Adams?
> MR. FOWLER: I did, your honor.
> COURT: Okay. Did you advise him of all of his rights, state and federal?
> MR. FOWLER: I did, your honor.
>                              *        *        *
> COURT: Now, Mr. Adams, is it your intention to have the Court enter this written
> guilty plea into the record today?

DEFENDANT: Yes.
COURT: Can you read and write?
DEFENDANT: Yes.
COURT: Did you read the written plea of guilty before you signed it?
DEFENDANT: Yes.
COURT: And is it correct you had an opportunity to review this written plea of guilty with Attorney Fowler?
DEFENDANT: Yes.
COURT: And do you affirm that Attorney Fowler answered all your questions and addressed your concerns?
DEFENDANT: Yes.
COURT: Are you satisfied with the services and the advice of Attorney Fowler?
DEFENDANT: Yes.
COURT Is there anything about this written plea or today's proceedings, that you do not understand?
DEFENDANT: No.
COURT: Do you understand that when you signed this plea, . . . you waived all of the Constitutional rights that are explained in the written plea of guilty, and when I accept this guilty plea, you will be found guilty of these charges? Do you understand that?
DEFENDANT: Yes.
COURT: Are you doing this voluntarily?
DEFENDANT: Yes.

{¶10}  "A trial court must strictly comply with Crim.R. 11(C)(2)(c) and orally advise a defendant before accepting a felony plea that the plea waives [the specified constitutional rights, including] the privilege against self-incrimination." *Veney*, 120 Ohio St.3d 176, 2008–Ohio–5200, 897 N.E.2d 621, at syllabus. Under Crim.R. 11(C)(2)(c), the trial court must orally inform the defendant that by pleading no contest or guilty, the defendant is waiving "the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself."

{¶11}  But, "[f]ailure to use the exact language contained in Crim.R. 11(C), in informing a criminal defendant of his constitutional rights related to such trial, including

the right to trial by jury, is not grounds for vacating a plea as long as the record shows that the trial court explained these rights in a manner reasonably intelligible to that defendant." *State v. Ballard*, 66 Ohio St.2d 473, 423 N.E.2d 115 (1981), paragraph two of the syllabus. Therefore, "a trial court can still convey the requisite information on constitutional rights to the defendant even when the court does not provide a word-for-word recitation of the criminal rule, so long as the trial court actually explains the rights to the defendant." *Veney* at ¶ 27. In other words, strict compliance does not mean literal compliance. *State v. Kerns*, 4th Dist. Highland No. 15CA6, 2016-Ohio-63, ¶ 30-33.

**{¶12}** "Although the trial court may vary slightly from the literal wording of the rule in the colloquy, the court cannot simply rely on other sources to convey these rights to the defendant." *Veney* at ¶ 29. The trial court does not satisfy the requirement of Crim.R. 11(C) by simply extracting comments or answers by defense counsel about the defendant's knowledge of his rights. *State v. Barker*, 129 Ohio St.3d 472, 2011-Ohio-4130, 953 N.E.2d 826, ¶ 14-15.

**{¶13}** Here the trial court did not explain the constitutional rights set forth in Crim.R. 11(C)(2)(c). Instead, the court referenced "Constitutional rights that are explained in the written plea of guilty" – which are the same constitutional rights identified in Crim.R. 11(C)(2)(c) – and determined that Adams's counsel explained them to him and Adams read them and understood them. Thus, the court failed to engage in the proper colloquy on Adams's constitutional rights, and instead relied entirely upon defense counsel to explain those rights, set forth in the written guilty plea.

**{¶14}** The Supreme Court of Ohio explained the extent to which a written plea agreement could be used to satisfy the requirements of Crim.R. 11(C)(2)(c) in *State v.*

*Barker*, 129 Ohio St.3d 472, 2011-Ohio-4130, 953 N.E.2d 826. There the Court found

that the court of appeals incorrectly interpreted *Veney* in finding that the written plea

agreement could not be used, *in part*, to determine whether a trial court had adequately

explained the right to compulsory process:

> In addition to invalidating Barker's plea based on the alleged insufficiency of the language employed to describe the right to compulsory process, the court of appeals cited *Veney*, which states that " 'the court cannot simply rely on other sources to convey these rights' " to the defendant. *Barker*, 2010-Ohio-3067, 2010 WL 2638515, ¶ 15, quoting *Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 29. The court held that the plea agreement was another source and therefore could not be employed to satisfy the constitutional mandate in Crim.R. 11(C)(2)(c). We disagree.
>
> In *Veney*, this court held, "Although the trial court may vary slightly from the literal wording of the rule in the colloquy, the court cannot simply rely on other sources to convey those rights to the defendant." *Id*. at ¶ 29. However, *Veney* can be distinguished on its facts. The court noted that in Veney's case, "it [was] undisputed that the trial court plainly failed to orally inform Veney of his constitutional right to require the state to prove his guilt beyond a reasonable doubt." *Id*. at ¶ 30. Therefore, because the trial court had completely "failed to orally inform" the defendant of the right in question, under the facts of *Veney*, the court could not "simply rely on other sources to convey these rights." *Id*. at ¶ 29.5
>
> In *Ballard*, as here, the trial court did not "simply" rely on the written plea. Rather, the trial court engaged in a full plea colloquy with the defendant and addressed the right of compulsory process of witnesses. Thus, when a trial court addresses all the constitutional rights in the oral colloquy, a reviewing court should be permitted to consider additional record evidence to reconcile any alleged ambiguity in it. We further note that this interpretation comports with federal law, which does not require automatic vacation of a plea when a judge fails to inform a defendant of a *Boykin* right. *Boykin*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274. See *United States v. Vonn* (2002), 535 U.S. 55, 59, 122 S.Ct. 1043, 152 L.Ed.2d 90.

*Barker* at ¶ 22-24.

**{¶15}** Under *Barker, Veney* and *Ballard*, the trial court's sole and exclusive use of the language in the written guilty plea, and reliance upon Adams's defense counsel to explain what the court referred to as "the Constitutional rights" to him, are insufficient to satisfy the requirements of Crim.R. 11(C)(2)(c).

**{¶16}** The state argues that the trial court referred to "the Constitutional rights" Adams was waiving and therefore the written plea agreement could be used to clarify this ambiguous reference. The state cites *State v. Ross*, 2013-Ohio-3220, 996 N.E.2d 1033 (9th Dist.); *State v. Bennett*, 9th Dist. Summit No. 26241, 2012-Ohio-3664; and *State v. Coleman*, 9th Dist. Summit No. 26008, 2012-Ohio-1712. These cases are factually distinguishable. The trial courts in each of those three cases orally explained the constitutional rights to the defendant using language other than the verbatim language of Crim. R. 11(C)(2)(c). *See Ross* at ¶ 7 ("At Ross's plea hearing, the trial court advised him that by pleading guilty he was 'giving up [his] right to a jury trial on both these cases; giving up [his] right [to] make the prosecutor prove the charge against [him] beyond a reasonable doubt; [he was] giving up [his] right to have [his attorney] subpoena and cross-examine witnesses for [him]; [and he was] giving up [his] right to testify or not testify in [his] own defense[.]' "); *see Bennett* at ¶ 7 ("The trial court advised Mr. Bennett that, by changing his pleas to guilty, he would 'give up [his] right to a jury trial, give up [his] right to making the prosecutor prove all the charges against [him] beyond a reasonable doubt, give up the right to have [his lawyer] subpoena and cross-examine witnesses for [him], give up the right to testify or not testify in [his] own defense, and ... give up the right to then appeal that [he] would have had if we'd gone to trial....' "); *see Coleman* at ¶ 7 ("At Mr. Coleman's plea hearing, the trial court spoke to

Mr. Coleman, stating:  '[B]y changing your plea you will give up your right to a jury trial; give up your right to make the prosecutor prove all the charges against you beyond a reasonable doubt; give up the right to have [your counsel] subpoena and cross-examine witnesses for you; give up the right to testify or not testify in your own defense, and you will give up your appellate rights[.] Do you understand all of that?' ").

**{¶17}** In all three cases, the Ninth District Court of Appeals found "that any ambiguity inherent in the language used at the hearing was resolved by the written plea form." *Ross* at ¶ 9. Here, the trial court simply did not make any attempt to orally explain Adams's constitutional rights to him, but relied exclusively on defense counsel to explain them through the written plea agreement.

**{¶18}** Accordingly, we reject the state's argument and hold the trial court did not strictly comply with Crim.R. 11(C)(2)(c). Therefore, his guilty plea was not voluntary, knowing, and intelligent, and we sustain his first assignment of error.

**{¶19}** Because we reverse Adams's conviction based upon the trial court's failure to comply with Crim.R. 11(C)(2)(c), his second assignment of error concerning restitution is moot and we need not address it. *See* App .R. 12(A)(1)(c).

### III. CONCLUSION

**{¶20}** The trial court's failure to inform Adams of his constitutional rights as required by Crim.R. 11(C)(2)(c) rendered his guilty plea invalid on the grounds that it was not made knowingly, intelligently and voluntarily. Having sustained his first assignment of error, we reverse the judgment of the trial court and remand the cause.

JUDGMENT REVERSED,
CAUSE REMANDED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS REVERSED and that the CAUSE IS REMANDED.  Appellee shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Hoover, J.:  Concur in Judgment and Opinion.


For the Court



BY:  _____
         William H. Harsha, Judge


### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**