[Cite as *State v. Thompson*, 2019-Ohio-5407.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NOS.  2018-P-0076** |
| | | **2018-P-0077** |
| JOHN C. THOMPSON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeals from the Portage County Court of Common Pleas, Case Nos. 2016 CR 00294 and 2016 CR 00900.

Judgment: Reversed and remanded.

*Victor V. Vigluicci,* Portage County Prosecutor, and *Pamela J. Holder,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH  44266 (For Plaintiff-Appellee).

*Dennis Day Lager,* P.O Box 2452, North Canton, OH  44720 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1}   Appellant, John C. Thompson, appeals his convictions in the Portage County Court of Common Pleas, arising from separate prosecutions, following the entry of guilty pleas to passing bad checks, misuse of credit cards, and theft.  We reverse and remand.

{¶2}   On February 9, 2017, in Case No. 2016 CR 00294, appellant entered a written plea of guilty to one count of passing bad checks, a felony of the fifth degree, in violation of R.C. 2913.11.  On the same date, in Case No. 2016 CR 00900, appellant

entered a written plea of guilty to four counts of theft, felonies of the fifth degree, in violation of R.C. 2913.02(A)(3); nine counts of grand theft, felonies of the fourth degree, in violation of R.C. 2913.02(A)(3); one count of theft from a person in a protected class, a felony of the fourth degree, in violation of R.C. 2913.02(A)(3) and (B)(3); one count of grand theft, a felony of the third degree, in violation of R.C. 2913.02(A)(3) and (B)(2); and seven counts of theft from a person in a protected class, felonies of the third degree, in violation of R.C. 2913.02(A)(3) and (B)(3).

{¶3} After accepting appellant's plea of guilty, the trial court conducted a sentencing hearing during which it adopted the parties' joint-sentencing recommendation, imposing the following prison terms: In Case No. 2016 CR 00294, appellant was sentenced to a prison term of one year for passing bad checks. In case No. 2016 CR 00900, appellant was sentenced to a prison term of one year for each count of felony-five theft (four counts); 18 months for each count of felony-four grand theft (nine counts); 18 months for felony-four theft from a person in a protected class; 36 months for felony-three grand theft; and 36 months for felony-three theft from a person in a protected class (seven counts). The one-year term for passing bad checks, the 36-month term for felony-three grand theft, and two counts of felony-three theft from a person in a protected class were ordered to be served consecutively to one another and the remaining terms were ordered to be served concurrently. Appellant's aggregate prison sentence was ten years. Additionally, the trial court ordered appellant to pay restitution in the amount of $512,852.51 and advised him that he may be subject to post-release control upon his release from prison. Appellant now appeals and assigns two errors for our review. His first asserts:

2

{¶4} "The trial court committed prejudicial and reversible error by accepting defendant's guilty plea without advising defendant of his constitutional right to a jury trial, and that his plea constituted a waiver thereof, all as required and mandated by Ohio Crim.R. 11(C)."

{¶5} A guilty plea entered in a criminal case must be made knowingly, intelligently, and voluntarily to be valid under both the United States and Ohio Constitutions. *Boykin v. Alabama*, 395 U.S. 238, 241 (1969); *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). Crim.R. 11 "was adopted to ensure that certain information necessary for entering a knowing, intelligent, and voluntary plea would be conveyed to a defendant." *State v. Gensert*, 11th Dist. Trumbull, No. 2015-T-0084, 2016-Ohio-1163, ¶9. The Ohio Supreme Court has emphasized that a trial court must strictly comply with Crim.R. 11(C) as it relates to the waiver of constitutional rights. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, ¶18, citing *State v. Ballard*, 66 Ohio St.2d 473, 479 (1981). Failure to *literally* comply with the language of Crim.R. 11(C)(2)(c) does not, however, invalidate a plea agreement as long as the record reveals that the trial court explained or referred to the constitutional rights "'"*in a manner reasonably intelligible to that defendant.*" '" (Emphasis sic.) *State v. Barker*, 129 Ohio St.3d 472, 2011-Ohio-4130, ¶14, quoting *Veney*, *supra*, at ¶27, quoting *Ballard*, *supra*, at 480. Still, a trial court must *orally advise* a defendant of the constitutional rights he or she is waiving before accepting a felony plea of guilty. *Veney*, *supra*, at syllabus. Moreover, the Court in *Veney* made it clear that a court may not rely exclusively upon outside sources to meet its Crim.R. 11(C)(2)(c) duties. The Court emphasized:

{¶6} [P]ursuant to the strict-compliance standard set forth in *Ballard,* the trial court must orally inform the defendant of the rights set forth in Crim.R. 11(C)(2)(c) during the plea colloquy for the plea to be

valid. Although the trial court may vary slightly from the literal wording of the rule in the colloquy, the court cannot simply rely on other sources to convey these rights to the defendant. "We cannot presume a waiver of these * * * important federal rights from a silent record." *Boykin [v. Alabama,* 395 U.S. 238,] 243 [89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)]. When the record confirms that the trial court failed to perform this duty, the defendant's plea is constitutionally infirm, making it presumptively invalid. See *Ballard,* [*supra,*] at 481 [423 N.E.2d 115]; *State v. Griggs,* 103 Ohio St.3d 85, 2004-Ohio-4415 [814 N.E.2d 51], ¶ 12. *Veney, supra,* at ¶29.

{¶7} Appellant contends the trial court erred in failing to fully advise him, during his plea colloquy, that he was waiving his right to a *jury* trial. As a result, he concludes, his plea of guilty is invalid because the trial court did not ensure it was entered knowingly, intelligently, and voluntarily.

{¶8} At the plea hearing, the trial court made the following advisements to appellant:

{¶9} By entering these pleas of guilty, you're giving up your right to a trial. At that trial the prosecutor would have to prove beyond a reasonable doubt each and every element of the charges against you. Your attorney could then cross-examine, confront the witnesses who come in to testify for the State of Ohio, you could subpoena or compel witnesses, have them come in and testify for you and you could take the stand at that trial if you choose to do so. You have a constitutional right not to testify, but if you wanted to you could. That along with those rights to trial you are giving up by entering these pleas of guilty; do you understand?

{¶10} Appellant responded in the affirmative to the trial court's query. The trial court, however, neither advised appellant had the right to a *jury* trial nor expressly alluded that a jury would be the arbiter of his guilt should appellant wish to exercise such a right. In *State v. Ralston*, 11th Dist. Portage No. 2017-P-0095, 2018-Ohio-4946, *accord State v. Antoine*, 11th Dist. Portage No. 2018-P-0009, 2019-Ohio-414, this court concluded such an omission renders a guilty plea invalid.

{¶11} In *Ralston*, this court concluded:

4

{¶12} In order to satisfy constitutional due process, there must be some actual indication the trial court orally mentioned a jury would be involved were the matter tried. This does not necessarily mean the reference to a jury must overtly advise a defendant she has a right to a jury trial which she would be waiving by pleading guilty; nevertheless, the reference or statement must meaningfully inform a defendant of the right in a reasonably intelligible fashion. For instance, by indicating "neither a judge nor jury" has the right to pass judgment on a defendant's decision not to testify, a trial court directly implies a defendant is entitled to have the jury adjudicate his or her case. *See Ballard, supra.* Similarly, if a court states it would "instruct the jury" that a defendant's decision not to testify cannot be used against that defendant, it stands to reason that the defendant has a right to have a jury consider the merits of the charges he or she is facing. *See State v. Hayward*, 6th Dist. Wood No. WD-17-010, 2017-Ohio-8611, 2017 WL 5565182. Likewise, when a court advises a defendant that the state will have to prove all elements of the charge(s) to the unanimous satisfaction of a jury, it necessarily follows that the defendant would be entitled to a jury trial if he or she elected to so proceed. *See* [*State v.*] *Young*, [11th Dist. Trumbull No. 2009-T-0130, 2011-Ohio-4018] and *State v. Smiddy*, 2d Dist. Clark No. 2014-CA-148, 2015-Ohio-4200, 2015 WL 5918084. In this case, there was simply no reference to appellant's constitutional right to a jury. As such, we cannot conclude appellant had even implicit notice that she was entitled to a trial by jury and thus we cannot conclude she knowingly, intelligently, and voluntarily waived. *Ralston, supra*, at ¶9.

{¶13} Pursuant to *Ralston*, which tracks and follows the reasoning of the Ohio Supreme Court in *Veney, supra,* and *Ballard, supra*, the trial court's advisement was insufficient and thus appellant's plea was not entered knowingly, intelligently, and voluntarily.

{¶14} We acknowledge that appellant's written plea of guilty states: "I understand these rights and it is my intention to waive them: (a) My right to a jury trial." His written plea additionally provides: "I have either read this Written Plea of Guilty or it has been read to me and I understand it, and that I wish to waive all of the rights set forth herein and voluntarily plead GUILTY to the charges set forth above." The written plea,

5

however, is an outside source upon which the trial court could not solely rely. Pursuant to *Veney*, appellant's plea is invalid.

{¶15} The state contends the trial court's omission merely rendered the trial court's advisement ambiguous, a position adopted by the dissent, and, as a result, we can consult the foregoing "outside source" to resolve any uncertainty. This court previously addressed, and rejected, this argument in *Ralston*, *supra*. To wit:

> {¶16} The state characterizes the omission at issue as an ambiguity in the oral plea colloquy which, pursuant to *Barker, supra,* may be clarified by reference to the written waiver. This construction, however, conflicts with the unequivocal statement of law in *Veney*, *supra*; namely, "that the court cannot simply rely on other sources to convey [constitutional] rights to the defendant." *Id. Veney* makes it additionally clear that it is the trial court's obligation to verbally inform the defendant and obtain an actual knowing, intelligent, and voluntary waiver of his or her rights. By clarifying the alleged ambiguity by reference to the written plea agreement, we are relying exclusively on an outside source and therefore presuming waiver. *See State v. Young*, [*supra*] (noting "after *Veney* it is clear that obtaining a signed written waiver is insufficient when the trial court completely omits an explanation of a constitutional right * * *." *Id.* at ¶43). *Ralston*, *supra*, at ¶8.

{¶17} Given the state's renewed iteration of its "ambiguity" argument, we shall further elucidate why we refused to extend *Barker's* holding to the facts of *Ralston*, *supra*, and again refuse in the instant matter. In *Barker*, *supra*, the trial judge, during the plea hearing, advised the defendant he would be "giving up [his] right to call witnesses to speak on [his] behalf." The court of appeals held the plea invalid, concluding this advisement was insufficient to apprise the defendant of the *compulsory* nature of the right he was waiving. The Supreme Court recognized that the trial court's advisement was not a rote recitation of the legal terminology set forth in the Constitution. It still pointed out that the use of the word "call," which means to summon, "in everyday usage clearly conveys the idea that one is required to appear or to

6

perform." *Id.* at ¶18,19. As such, the Court concluded the phrase "right to call witnesses to speak on [his] behalf" "was a reasonably intelligible explanation to the defendant of his constitutional right to compulsory process and allowed the defendant to make a voluntary and intelligent decision whether to plead no contest." *Id.* at ¶20. The Court went on to note that use of the word "call" could be seen as ambiguous and thus held, under such circumstances, the ambiguity could be clarified by reference to other portions of the record, including the plea agreement. *Id.* at paragraph two of the syllabus.

{¶18} The plain language of Ohio's criminal rules *requires* an advisement that intelligibly communicates that a defendant, in pleading guilty, is waiving his or her right to a jury trial. We must apply these rules as written.

{¶19} Furthermore, the use of the word "call" in *Barker* was deemed essentially synonymous with "force" or "compel." And, as such, in clarifying the defendant's understanding, the Court did not rely exclusively on the written plea agreement. Here, there was no reference or even a rough allusion by the trial court that appellant would be waiving his right to a *jury* trial. Had the trial court in this case advised appellant that, by pleading guilty, he was waiving his right "to a trial before a collection of his peers," for example, it would be analogous to *Barker.* It did not do so and thus we decline to extend the *Barker* rule to these facts.

{¶20} A criminal defendant has a right to a trial, but he or she has the additional right to be tried by an impartial jury. "The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, guarantees an accused the right to <u>trial by jury</u>." (Emphasis added.) *State v. Lomax,* 114 Ohio St.3d 350, 2007-Ohio-4277, ¶6, citing *Duncan v. Louisiana,* 391 U.S. 145 (1968).

7

Further, "[t]he accused's right to be *tried by a jury* is secured in this state by Article I, Section 10 of the Ohio Constitution." (Emphasis added.) *State v. Tate,* 59 Ohio St.2d 50, 52 (1979). The right is specific and cannot be waived by a general, hollow reference to "a trial." We identify this point as a matter of scholarship. At issue in this case is whether the trial court met its procedural obligations under Ohio's Crim.R. 11. It did not. Because the trial court made no citation to appellant's right to a jury trial, referencing the plea agreement would require this court to rely *exclusively* on an outside source, in contravention of Ohio's Crim.R. 11 and the Supreme Court's holding in *Veney, supra*.

{¶21} The right to a trial ensures fundamental due process in a criminal prosecution. A court could hold a trial without a jury and still comport with due process. In Ohio, however, the trial judge is required to advise a defendant that he or she is waiving not simply one's due process right to a trial, but also his or her additional right to have the case tried to a jury.

{¶22} Finally, we are aware, that federal courts have affirmed guilty pleas in situations similar to the instant matter. While Federal Crim.R. 11 states that a court "must inform" a defendant of his or her right to a jury trial during the colloquy, it does not necessarily require an oral advisement. Pursuant to the Ohio Supreme Court, a trial court is required to orally advise a criminal defendant that, by pleading guilty, he or she waives the right to a jury trial per Ohio's Crim.R. 11. The United States Supreme Court has held "[i]t is elementary that states are free to provide greater protections in their criminal justice system[s] than the Federal Constitution requires." *California v. Ramos*, 463 U.S. 992, 1013 (1983). Ohio is not creating an additional substantive Constitutional right by requiring a trial court to advise a criminal defendant he or she is waiving his or her right to a jury trial. To the contrary, by requiring a court to so advise a defendant,

8

Ohio procedurally augments a trial court's obligation to further establish that a criminal defendant's plea is entered knowingly, intelligently, and voluntarily *pursuant to* the state and federal constitutions. Crim.R. 11 simply affords a criminal defendant in Ohio with greater information than the Federal rule demands vis-à-vis entering a guilty plea. Requiring a trial court to comply strictly with the rule by referencing a defendant's right to have a jury decide his or her fate is not an onerous burden.

{¶23} To meet the requirements of due process in Ohio, a trial court is required to orally advise a defendant he or she is waiving the right to a jury trial in a manner reasonably intelligible to that defendant. The trial court failed to do so in this case. Appellant's plea is therefore invalid.

{¶24} Appellant's first assignment of error has merit.

{¶25} Appellant's second assignment of error provides:

{¶26} "Imposition of consecutive sentences upon defendant was contrary to law because the trial court failed to make requisite findings required by R.C. 2929.14(C) at the time of sentencing."

{¶27} Because we hold appellant's plea is invalid, appellant's sentence is necessarily negated. Any discussion of this assignment of error would be purely advisory.

{¶28} Appellant's second assignment of error is overruled as unripe.

{¶29} For the reasons discussed in this opinion, the judgment of the Portage County Court of Common Pleas is reversed and remanded for further proceedings.


MARY JANE TRAPP, J., concurs,

MATT LYNCH, J., dissents with a Dissenting Opinion.

9

_____

MATT LYNCH, J., dissents with a Dissenting Opinion.

{¶30} The majority reverses Thompson's guilty pleas on the grounds that the trial court failed to orally advise him that he was "waiving the right to a jury trial in a manner reasonably intelligible to that defendant." *Supra* at ¶ 23. Specifically, it was the trial court's failure to advise Thompson that the right to trial he was waiving was the right to a jury trial which rendered his plea a violation of due process, something less than a knowing, intelligent, and voluntary admission of guilt. On the contrary, there is no more reasonably intelligible association to a criminal defendant than the association of "trial" with "trial by jury" or a "jury trial." Any confusion that Thompson may have had as to whether he was waiving a jury trial or bench trial in the present case would have been resolved by the written plea agreements he signed, which attest in no uncertain terms: "I have been informed by my Attorney and by the Judge that by pleading guilty I waive the following Constitutional Rights and I understand these rights and it is my intention to waive them: (a) My right to a jury trial * * *." As Thompson had been reasonably apprised of his right to a jury trial at the time he entered his pleas, his convictions should be affirmed and I respectfully dissent.

{¶31} In order to enter a valid plea in a criminal case, "the plea must be made knowingly, intelligently, and voluntarily." *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). To ensure that the plea is knowing, intelligent, and voluntary, "the trial court must inform the defendant that he is waiving his privilege against compulsory self-incrimination, his right to jury trial, his right to confront his accusers, and his right of

10

compulsory process of witnesses." *State v. Ballard*, 66 Ohio St.2d 473, 423 N.E.2d 115 (1981), paragraph one of the syllabus, following *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). These requirements for a valid plea are contained in Ohio Criminal Rule 11(C)(2). The Ohio Supreme Court has always considered these requirements to derive from the federal constitutional rights identified in *Boykin*. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 24 ("[i]n *Ballard*, we cited *Boykin v. Alabama* * * * for the principles that a defendant must be apprised of certain constitutional rights before his or her plea may be considered intelligent and voluntary") (footnote omitted); *State v. Johnson*, 40 Ohio St.3d 130, 133, 532 N.E.2d 1295 (1988) ("[w]e have previously determined that this rule [Crim.R. 11(C)(2)] fully encompasses those procedural requirements established by the United States Constitution upon this issue").[1]

{¶32} In construing the requirements of Criminal Rule 11(C)(2)(c), the Ohio Supreme Court has insisted upon strict, but not literal, compliance. *Veney* at ¶ 29. "Failure to use the exact language contained in Crim.R. 11(C), in informing a criminal defendant of his constitutional right to a trial and the constitutional rights related to such trial, including the right to trial by jury, is not grounds for vacating a plea as long as the record shows that the trial court explained these rights in a manner reasonably intelligible to that defendant." *Ballard* at paragraph two of the syllabus. Moreover, "[a]n alleged ambiguity during a Crim.R. 11 oral plea colloquy may be clarified by reference

---

1. It should be noted that the right to compulsory process was not mentioned in *Boykin*. The Ohio Supreme Court nevertheless christened it a *Boykin* right by reference to the Sixth Amendment to the United States Constitution. *See Ballard* at 477, fn. 4: "It may be noted that *Boykin* did not mention the right of the defendant to have compulsory process of witnesses to testify on his behalf. However, as the right is guaranteed by the Sixth Amendment to the United States Constitution, and like those mentioned in *Boykin* is a trial right, we hold that the defendant must also be informed of his right to compulsory process."

to other portions of the record, including the written plea." *State v. Barker*, 129 Ohio St.3d 472, 2011-Ohio-4130, 953 N.E.2d 826, paragraph two of the syllabus.

{¶33} In considering the validity of guilty pleas where there has not been strict compliance, the Ohio Supreme Court has repeatedly and consistently adopted a practical approach to the issue. *See, e.g., Ballard* at 480 ("failure to use the exact language of the rule is not fatal to the plea" and "[t]o hold otherwise would be to elevate formalistic litany of constitutional rights over the substance of the dialogue between the trial court and the accused"); *State v. Billups*, 57 Ohio St.2d 31, 38-39, 385 N.E.2d 1308 (1979), quoting *McCarthy v. United States*, 394 U.S. 459, 467, fn. 20, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969) (in determining whether there has been substantial compliance with Crim.R. 11(C)(2), "'(m)atters of reality, and not mere ritual, should be controlling'"). That practical sensibility has also been the practice of this court. While "it is clear that obtaining a signed written waiver is insufficient when the trial court completely omits an explanation of a constitutional right, it still may be argued that a reviewing court may also consider other factors in the record, such as written materials reviewed by counsel and a defendant when determining whether the oral explanation was 'reasonably intelligible.'" *State v. Young*, 11th Dist. Trumbull No. 2009-T-0130, 2011-Ohio-4018, ¶ 43.

{¶34} At the change of plea hearing, the trial court judge advised Thompson:

> By entering these pleas of guilty, you're giving up your right to a trial. At that trial the prosecutor would have to prove beyond a reasonable doubt each and every element of the charges against you. Your attorney could then cross-examine, confront the witnesses who come in to testify for the State of Ohio, you could subpoena or compel witnesses, have them come in and testify for you and you could take the stand at that trial if you chose to do so. You have the constitutional right not to testify, but if you wanted to you could. That along with those rights to trial you are giving up by

12

entering these pleas of guilty; do you understand?

Thompson answered in the affirmative.

{¶35} Thus the trial court addressed Thompson and informed him that, by pleading guilty, he was waiving his right to trial and the concomitant trial rights to have the prosecutor "prove beyond a reasonable doubt each and every element of the charges," to "confront the witnesses who come in to testify for the State," to "subpoena or compel witnesses * * * [to] come in and testify," and the "constitutional right not to testify." The court did not however, qualify the right to trial as a right to a jury trial. Any ambiguity as to the nature of the trial right, pursuant to *Barker*, may be clarified by reference to Thompson's written plea agreements. The trial court referenced these agreements during the plea colloquy, inquiring of Thompson whether his attorney "went over" the agreements, whether it was Thompson's signature on the agreements, whether he was satisfied with his attorney, and whether he had "any questions at all" about the rights he was waiving.

{¶36} The majority construes the foregoing as a complete failure to reference the right to a jury trial – "there was no reference or even a rough allusion by the trial court that the appellant would be waiving his right to a *jury* trial" – so as to preclude consideration of other portions of the record or the totality of the circumstances. *Supra* at ¶ 19. On the contrary however, the trial court referenced the right to a "trial" in four separate sentences.

{¶37} To advise Thompson of the right to trial necessarily implies a trial by jury just as advising Thompson of the right to a jury is nonsensical unless a trial is understood. The essential right is that of a trial and jury serves to qualify this right. It cannot be credibly maintained that advising Thompson of his right to a "trial" constitutes

13

a complete omission of any mention of his right to a "jury trial" even if the word jury is unexpressed. The majority's reasoning requires one to conclude that the word "trial" necessarily excludes a trial by jury which clearly it does not. It should be impossible to conclude from this record of the repeated use of the word "trial" that no reference was made to Thompson's right to a jury. At best one might argue that without adding the qualifier "jury" that the mere use of the word "trial," even four times, would be ambiguous as it relates to the right to a jury.

{¶38} The Ohio Supreme Court's decision in *Barker* illustrates the foregoing and supports the affirmance of Thompson's guilty pleas. In *Barker*, the trial judge informed the defendant, "do you understand * * * you're * * * *giving up your right to call witnesses to speak on your behalf*," rather than the right of "compulsory process for obtaining witnesses" as stated in the Criminal Rule. *Barker*, 129 Ohio St.3d 472, 2011-Ohio-4130, 953 N.E.2d 826, at ¶ 4. The court implied the right of process for obtaining witnesses but did not advise the defendant that such process was compulsory. Similarly, in the present case, the trial judge informed Thompson of his right to trial, but not that it would be a trial by jury.

{¶39} The Supreme Court affirmed the plea colloquy in *Barker* holding that advising the defendant that he could "call" witnesses satisfied both rule and constitution in that the definition of "call" included "to command or request the attendance of" and, in "everyday parlance," the word "clearly conveys the idea that one is required to appear or to perform." *Id.* at ¶ 17-18. Likewise, in the present case, consideration of the word "trial" in everyday parlance clearly conveys the idea of a jury trial – the most common type of trial in the experience of most Americans. Just as the Supreme Court in *Barker* made reference to common dictionaries to demonstrate how a defendant might

14

reasonably understand the word "call," one might google the word "trial" and find that it is "a formal examination of evidence before a judge, and typically before a jury," or one might consult the Black's Law Dictionary entry for "**jury trial**" and be directed: "SEE TRIAL." When the trial judge advised Thompson that he was waiving his right to trial, he could only have understood that trial to have been a jury trial or a bench trial. This is at worst an ambiguity, not a complete omission of any mention of the right.

{¶40} Even more compelling in *Barker*, the Supreme Court considered an alternative justification for affirming the defendant's plea, i.e., the signed plea form stated: "I understand by entering this plea I give up my right to a jury trial or a court trial, * * * *where I could use the power of the court to call witnesses to testify for me.*" *Barker* at ¶ 5. The court of appeals held, relying on *Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, that "the plea agreement was another [outside the plea colloquy] source and therefore could not be employed to satisfy the constitutional mandate in Crim.R. 11(C)(2)(c)." *Id.* at ¶ 22. The Supreme Court disagreed.

{¶41} The Court distinguished *Veney* factually because in that case "the trial court had completely 'failed to orally inform' the defendant of the right in question." *Id.* at ¶ 23. Thus, *Veney* is "limited to the situation where a trial court omits any discussion of a constitutional right in the oral colloquy." *Id.* at ¶ 25. In *Barker*, as in the present case, the trial judge engaged in a full plea colloquy and addressed all the constitutional rights required by the Criminal Rule. The issue in *Barker*, as in the present case, is whether a particular right was adequately addressed, not that all mention of the right was absent from the colloquy. "Thus, when a trial court addresses all the constitutional rights in the oral colloquy, a reviewing court should be permitted to consider additional record evidence to reconcile any alleged ambiguity in it." *Id.* at ¶ 24.

{¶42} In *Barker*, the Supreme Court "[f]ollow[ed] the totality-of-the-circumstances test of *Ballard*," and found the plea to have been made knowingly, intelligently, and voluntarily: "Barker was represented by counsel, and he signed a written change-of-plea form stating that he understood that he was giving up the right to use the power of the court to call witnesses to testify for him." *Id.* at ¶ 26. The majority states that it will "decline to extend the *Barker* rule to these facts [of the present case]." *Supra* at ¶ 19. It is not necessary to extend *Barker*, it need only be applied which, as controlling law, it should be. If the ideas of "force" and "compel" are implied by the use of the word "call," then certainly the idea of "jury" is implied by the use of the word "trial."

{¶43} The majority acknowledges that "federal courts have affirmed guilty pleas in situations similar to the instant matter" and that the federal rule/*Boykin* "does not necessarily require an oral advisement [of the right to a trial by jury]."[2] *Supra* at ¶ 22. The majority then concludes that "Ohio procedurally augments a trial court's obligation" and "affords a criminal defendant * * * with greater information than the Federal rule demands vis-à-vis entering a guilty plea." *Id.* No authority is cited for the proposition that Ohio procedurally augments the standards for waiving a defendant's *Boykin* rights and, considering the authority cited above, the proposition is doubtful. In *Barker*, the Ohio Supreme Court did not mention any procedural augmentation peculiar to Ohio, but affirmed that its holding with respect to consideration of additional record evidence to determine the validity of a plea "comports with federal law, which does not require

---

2. *See State v. Bourque*, 933 F.2d 1016, 1991 WL 86895, *2 (9th Cir.) ("the fact that the Massachusetts sentencing court referred to waiver of the right to 'trial' rather than 'jury trial' when Bourque entered his guilty pleas" did not render "those pleas unknowing and involuntary") (cases cited); *Guillory v. Cain*, W.D.La. No. 6:14-cv-1008, 2014 WL 6909683, *6 ("where it appears the accused was generally advised of his rights, the failure to make an express, specific reference to the right to a jury trial, as opposed simply to a trial, does not invalidate a guilty plea"); *United States v. Locke*, 293 F.Supp.3d 559, 567, fn. 8 (E.D.Vir.2018) ("*Boykin* does not require specific articulation of the right to trial by a jury") (citation omitted).

16

automatic vacation of a plea when a judge fails to inform a defendant of a *Boykin* right." *Barker* at ¶ 24. When the Ohio Supreme Court adopted the rule in *Ballard* that a plea is constitutionally infirm when the defendant is not informed of his rights in a reasonable manner, it described the holding as "mandated by our reading of *Boykin*." *Ballard*, 66 Ohio St.2d at 478, 423 N.E.2d 115. In *Johnson*, the Court asserts that Criminal Rule 11(C)(2) "fully encompasses those procedural requirements established by the United States Constitution upon this issue." *Johnson*, 40 Ohio St.3d at 133, 532 N.E.2d 1295.

{¶44} "The question of an effective waiver of a federal constitutional right in a proceeding is of course governed by federal standards." *Boykin*, 395 U.S. at 243, 89 S.Ct. 1709, 23 L.Ed.2d 274. Given the foregoing, federal precedent on this issue merits consideration.

{¶45} The plea colloquy in this case was inadequate, and the association of "jury" with "trial" does not cure the inadequacy. What it does do, under the authority of *Barker*, is allow this court to rely upon the written plea agreements to cure the inadequacy. In all other respects, the trial court in the present case fully complied with all the mandates of Criminal Rule 11. Rather than concede that there has not been a complete failure to advise Thompson of his trial rights, the majority would reverse the pleas for the omission of a single word during the plea colloquy.

{¶46} Accordingly, I respectfully dissent and would affirm the decision of the trial court.