[Cite as *State v. Weber*, 2021-Ohio-1804.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 20CA6 |
| Plaintiff-Appellee, | : | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| DAVID P. WEBER, JR., | : | |
| Defendant-Appellant. | : | **RELEASED: 05/24/2021** |

_____

APPEARANCES:

Ryan R. Black, Hocking County Prosecutor, Logan, Ohio, for Appellee.

Ryan Shepler, Logan, Ohio, for Appellant.

_____

Wilkin, J.

{¶1} This is an appeal from a decision of the Hocking County Court of Common Pleas that accepted appellant, David P. Weber, Jr.'s ("appellant") guilty plea for gross sexual imposition ("GSI"), and sentenced him to a four-year term in prison. Appellant argues that the trial court erred in accepting his plea because it failed to comply with Crim.R. 11(C). After reviewing the appellant's arguments, the trial court's record, and the applicable law, we overrule appellant's single assignment of error, and affirm the trial court's judgment entry of conviction.

BACKGROUND

{¶2} On April 13, 2018, the state charged appellant with rape in violation of R.C. 2907.02(A)(1)(b) and (B), a first-degree felony; and GSI in violation of R.C. 2907.05(A)(4), a fourth-degree felony. On June 7, 2018, the trial court held a plea

hearing during which appellant agreed to plead guilty to an amended GSI charge, a third-degree felony, and in return the state dismissed the rape charge. After a colloquy with the appellant, the court accepted the plea and sentenced appellant to four years in prison.

{¶3} On March 30, 2020, appellant filed a motion for leave to file a delayed appeal. On July 15, 2020, this court granted his motion. Appellant now presents a single assignment of error.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED BY ACCEPTING APPELLANT'S GUILTY PLEA
WITHOUT FURTHER INQUIRY

{¶4} Appellant argues that his plea was not voluntary, intelligent, and knowing because the trial court did not strictly comply with Crim.R. 11(C) pursuant to *State v. Miller,* 159 Ohio St.3d 447, 2020-Ohio-1420, 151 N.E.2d 617. Appellant alleges that his responses to the trial court's colloquy raised questions as to whether he understood his plea. Appellant cites the following exchanges with the trial court during the plea hearing in support:

> Appellant: I'm L.D.
> Court: You're what?
> Appellant: Learning disability.
> Court: Oh, you have some sort of learning disability? What kind of disability do you have?
> Appellant: Just through school.
> Court: Through school? All right?
> Appellant: When I was going to school I had a hard time.
> Court: So you had some learning problems?
> Appellant: Couldn't read real well.

Appellant also cites the following exchange at the sentencing hearing:

> Appellant: I didn't do nothing. Tried—
> Court: Sir—

Appellant: —to help.
Court: Sir, be quiet.
Appellant: I'm sorry, I just—

Finally, appellant cites the following exchange during allocution:

Appellant: Sorry for everything, I guess.
Counsel: You can say that louder if you want.
Appellant: I'm just sorry.
Court: Sorry?
Appellant: Yeah, I didn't—I didn't want—I didn't hurt nobody.  I didn't do—
Court: Well, the jury says—
Appellant: —feel like I really done—
Court: —that's true according what the victims have said.
Appellant: I understand that, but the kid spoke to me for awhile.
Appellant: Yeah.  But, yeah, just sorry.
Court: All right.
Appellant: That's all I can do.

**{¶5}** Appellant argues his responses during the colloquy obligated the trial court to make additional inquiry into whether appellant understood his plea, citing *State v. Mink*, 101 Ohio St.3d 350, 2004-Ohio-1580, 805 N.E.2d 1064, ¶ 66.  Appellant also cites *State v. Nickell*, 6th Dist. Wood No. WD-07-015, 2008-Ohio-1571 in support of his appeal.  Therefore, appellant argues that his plea should be vacated.

**{¶6}** In response, the state asserts that a trial court strictly complies with Crim.R.11(C)(2)(c) when it orally advises a defendant in a manner reasonably intelligible to a defendant that the plea waives the rights enumerated in the rule.  The state argues that the trial court herein strictly complied with the requirements of Crim.R. 11(C)(2)(c).  The state claims that appellant's counsel informed the court that he had reviewed the plea documents with appellant and that appellant understood the documents.  Therefore, the state maintains appellant's plea was knowing, voluntary, and intelligent, and this court should affirm the trial court's judgment of conviction.

## I. LAW

{¶7} "Crim.R. 11 governs the process of entering a plea." *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 8. "A defendant enters a plea in a knowing, intelligent, and voluntary manner when the trial court fully advises the defendant of all the constitutional and procedural protections set forth in Crim.R. 11(C) that a guilty plea waives." *State v. Day*, 4th Dist. Adams No. 19CA1085, 2019-Ohio-4816, 149 N.E.2d 122, ¶ 23, citing *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 25. To achieve that goal, "the trial court should engage in a dialogue with the defendant as described in Crim.R. 11(C)." *State v. Ruby*, 4th Dist. Adams No. 3CA780, 2004-Ohio-3708, ¶ 8, citing Crim.R. 11(C)(2)(a). During that colloquy, the court may not accept a plea in a felony case under Crim.R. 11(C)(2) without doing all of the following:

> (a) Determining that the defendant is making the plea
> voluntarily, with understanding of the nature of the charges and of
> the maximum penalty involved, and if applicable, that the defendant is
> not eligible for probation or for the imposition of community
> control sanctions at the sentencing hearing.
> (b) Informing the defendant of and determining that the
> defendant understands the effect of the plea of guilty or no contest, and
> that the court, upon acceptance of the plea, may proceed with judgment
> and sentence.
> (c) Informing the defendant and determining that the defendant
> understands that by the plea the defendant is waiving the rights to jury
> trial, to confront witnesses against him or her, to have compulsory
> process for obtaining witnesses in the defendant's favor, and to require
> the state to prove the defendant's guilt beyond a reasonable doubt at a
> trial at which the defendant cannot be compelled to testify against
> himself or herself.

Crim.R. 11(C)(2).

{¶8} In reviewing a defendant's non-constitutional rights (maximum penalty involved, understanding effect of plea, etc.), a trial court must substantially comply with

Crim.R. 11(C)(2)(a) and (b).  *State v. Veney*, 120 Ohio St. 3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 18.  " '[S]ubstantial compliance' means that 'under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving.' "  *State v. Morrison*, 4th Dist. Adams No. 07CA854, 2008-Ohio-4913, ¶ 9, quoting, *State v. Puckett*, 4th Dist. Scioto No. 3CA2920, 2005-Ohio-1640, ¶ 10, citing *State v. Stewart,* 51 Ohio St.2d 86, 364 N.E.2d 1163 (1977); *State v. Carter,* 60 Ohio St.2d 34, 396 N.E.2d 757 (1979).

{¶9} In contrast, when reviewing a defendant's constitutional rights (right to a jury trial, right to call witnesses, etc.), a trial court must strictly comply with Crim.R. 11(C)(2)(c).  *Veney* at ¶ 18.  However, "strict compliance does not mean literal compliance."  *State v. Adams*, 4th Dist. Washington No. 15CA44, 2016-Ohio-2757, ¶ 11, citing *State v. Kerns,* 4th Dist. Highland No. 15CA6, 2016-Ohio-63, ¶ 30–33.  A court does not need to engage in "a word-for-word recitation of the criminal rule, so long as the trial court actually explains the rights to the defendant."  *Id.* at ¶ 12, citing *Veney* at ¶ 27.

{¶10} "The ultimate inquiry when reviewing a trial court's acceptance of a guilty plea is whether the defendant entered the plea in a knowing, intelligent, and voluntary manner."  *State v. Day*, 4th Dist. Adams No. 19CA1085, 2019-Ohio-4816, ¶ 23, 149 N.E.3d 122, citing *Veney* at ¶ 7.  "In determining whether a guilty or no contest plea is knowing, intelligent, and voluntary, an appellate court must examine the totality of the circumstances through a de novo review of the record to ensure that the trial court complied with constitutional and procedural safeguards."  *State v. Meade*, 4th Dist. Scioto No. 17CA3816, 2018-Ohio-3544, ¶ 6, citing *State v. Billiter,* 4th Dist.

Scioto No. 15CA3720, 2018-Ohio-733, ¶ 15, citing *State v. Cooper*, 4th Dist. Athens No. 11CA15, 2011-Ohio 6890, ¶ 35.  "A guilty plea that is not entered into knowingly, intelligently, and voluntarily is void."  *State v. Collins*, 4th Dist. Lawrence No. 18CA11, 2019-Ohio-3428, ¶ 7, citing *State v. Moore,* 165 Ohio App.3d 538, 2006-Ohio-114, 847 N.E.2d 452, ¶ 22 (4th Dist.), citing *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969).

## II. ANALYSIS

### 1.  Appellant's Legal Authority

{¶11} Appellant argues that *Miller,* 159 Ohio St.3d 447, 2020-Ohio-1420, 151 N.E.2d 617, requires strict compliance with Crim.R. 11(C) to ensure that a defendant's plea is voluntary.  Appellant appears to suggest that *Miller* requires strict compliance with Crim.R. 11(C) in its entirety.  We disagree.  *Miller* does not address, and therefore does not alter existing jurisprudence regarding the requirement that a trial court must substantially comply with Crim.R. 11(C)(2)(a) and (b), which addresses non-constitutional rights.  Rather, *Miller* "reaffirm[ed]" that a trial court must strictly comply with Crim.R. 11(C)(2)(c) when informing a defendant of the constitutional rights that he or she will waive in pleading guilty or no contest to a crime, and that "a failure to do so cannot be deemed harmless."  *Miller* at ¶ 16.  *Miller* further explained that "a trial court strictly complies with Crim.R. 11(C)(2)(c) when in its plea colloquy with the defendant, it advises the defendant in a manner reasonably intelligible to the defendant that the plea waives the rights enumerated in the rule."  *Id.* at ¶ 19.  Therefore, aside from explaining or clarifying what strict compliance means, we find that *Miller* does not alter the law set forth in this decision regarding compliance with Crim.R. 11(C).

{¶12} Appellant also cites *Mink*, 101 Ohio St.3d 350, 2004-Ohio-1580, 805 N.E.2d 1064 in support of his argument that his responses during the colloquy required the trial court to inquire further into whether he understood the plea agreement. In *Mink* the court, in pertinent part, stated: "[a]dditional inquiry is necessary into a defendant's mental state once a defendant seeking to enter a guilty plea has stated that he is under the influence of drugs or medication." *Id.* at ¶ 66. There is no evidence that appellant was on any medication. Therefore, *Mink* provides no support for appellant's argument.

{¶13} Finally, appellant cites *Nickell*, 6th Dist. Wood No. WD-07-015, 2008-Ohio-1571. We also find that *Nickell* is not persuasive to our analysis. In *Nickel*, the court of appeals reversed the trial court's acceptance of appellant's no-contest plea in pertinent part finding her plea was not supported by competent credible evidence that her plea was knowing, or intelligent. *Id.* at ¶ 130. The record in *Nickell* was replete with evidence that appellant's plea was not knowing or intelligent. For example, the court of appeals found:

> [A]ppellant had great difficulty in focusing on or understanding the court's questions. When she indicated that she did not understand, the court or her attorney continued to merely repeat the question. She was not asked to explain in her own words what had been said or what she understood. Her "yes" or "yeah" answer often came only after the question was repeated by both the court and her attorney several times. If appellant understood any given question, within mere moments, her subsequent responses signaled that she did not, in fact, retain that understanding as it applied to the proceedings as a whole.
> Thus, even with the repetitive coaxing and questioning, appellant was unable to sufficiently focus on and comprehend the nature and objectives of the proceedings. Many of appellant's answers were non-responsive, indicating that she clearly did not understand that under a no contest plea, she would likely be found guilty, or even why she had been charged with the offense.
> Even the court itself expressed that it had difficulty discerning whether appellant's inability to comprehend was due to lack of education or mental health issues. Nothing in the record indicates that

appellant was "faking it," nor did the trial court make such a finding. Instead, we conclude that appellant's ability to understand or to become "educated" as to the legal issues involved was inextricably intertwined with her mental health and medication issues. Consequently, we conclude that the record shows that, due to her mental illness and somewhat limited cognitive abilities, appellant was unable to fully participate in her defense or to appreciate the ramifications of the no contest plea and subsequent conditions of sentencing.

*Id.* at ¶ 116-118.

**{¶14}** Unlike in *Nickell*, there was no need for "repetitive coaxing and questioning" of appellant herein by counsel or the court, and his answers to the trial court's questions were responsive and appropriate. There is also no evidence that appellant had "mental health [or] medication issues." Therefore, we find *Nickell* is distinguishable from the case at bar.

### 2.  Appellant's Plea Hearing

**{¶15}** At the beginning of appellant's plea hearing, the trial court prefaced the colloquy by stating: "[i]f at any time you don't understand what we are talking about, I want you to stop me so we can discuss your questions." "If at any time you want to stop and talk to your attorney, we can stop and do that." Appellant had few questions, none that went unanswered, and his responses during the colloquy indicate that he understood the nature of the proceedings, and his guilty plea.

**{¶16}** The trial court asked appellant if he understood his constitutional rights, and appellant responded affirmatively. Appellant also acknowledged that his counsel had explained to him his constitutional rights. Additionally, the trial court asked appellant if he understood that by pleading guilty he would be giving up his right to a jury trial, to compel witnesses to testify, to confront witnesses, to require the state to prove appellant's guilt beyond a reasonable doubt, and his right to remain silent. Each

time, appellant responded affirmatively.  We find that the trial court advised appellant in a manner reasonably intelligible regarding the constitutional rights he would be giving up by pleading guilty.  At no time did appellant claim that he did not understand his constitutional rights, or that he was waiving them by pleading guilty.  Therefore, we find that the trial court strictly complied with Crim.R. 11(C)(2)(c).

{¶17} The trial court also discussed appellant's non-constitutional rights.  During the colloquy, the trial court asked appellant if he was threatened into accepting the plea, or promised anything, aside from the plea itself.  Appellant responded negatively to both questions.  Appellant acknowledged to the court that he understood that it was not bound to accept his plea; and he had reviewed with his attorney possible defenses, the evidence, discovery from the state, and plea arrangements offered by the state.  Appellant further informed the court that he had no mental or emotional illness that would affect his ability to voluntarily enter the plea.  He also confirmed that he was not under the influence of drugs or alcohol at the time of the hearing, or within the last seven days.  The court noted that appellant was "making eye contact and his body language is appropriate."  Finally, appellant acknowledged that he was aware of the maximum penalty for GSI, that the court could proceed immediately to sentencing after accepting the plea, and that his counsel had "been very good" in representing him.  Again, appellant did not have any questions, or otherwise indicate that he did not understand the proceedings.  Therefore, we find that the trial court substantially complied with Crim.R 11(C)(2)(a) and (b) in its colloquy with appellant.

{¶18} Appellant did inform the trial court that he had a learning disability.  However, he also admitted to the court that he had graduated from high school and,

although he had trouble with large words, he could read.  The court confirmed that appellant's counsel had reviewed the plea documents with appellant, and he (counsel) was confident that appellant understood those documents.  The court further asked appellant if he had "any sort of physical or mental impairment that might in any way affect your capacity to understand what we are doing here today, or understand what you and I are talking about, or would affect your ability to make a free and voluntary choice as to whether to plead guilty or not?"  Appellant responded: "No sir."  We find that to the extent that appellant has a learning disability, it did not impair his ability to understand the nature of the plea hearing, or his plea.  See *State v. Moore*, 8th Dist. Cuyahoga Nos. 108962, 108963, and 108964, 2020-Ohio-3459, ¶ 42 ("The record contains no 'indicia of incompetence' on the part of Moore. There is nothing to suggest that any mental condition or learning disability Moore may have had (or the consequences of any prior drug use or abuse) precluded him from understanding the nature and objective of the proceedings against him, in assisting in his defense or in otherwise entering knowing, intelligent and voluntary guilty pleas.").

{¶19} Appellant also alleges that he did not understand his plea based on several statements he made during his sentencing and allocution, such as "I didn't do nothing" and "I didn't hurt nobody."  These isolated statements, made *after* the court accepted appellant's plea, stand in stark contrast to the significant amount of discussion between appellant and the court during the colloquy that plainly indicates that appellant understood the nature of the plea hearing and his plea.  We point out the following exchange as an example:

Court: [H]ave you read the charge you're pleading to?
Appellant: Yes.

Court: Do you understand the allegations?
Appellant:  Yes, sir.
Court: Have you and your attorney carefully reviewed the charge?
Appellant: Yes.
Court: Do you have any questions about the elements of the offense you're pleading guilty to?
Appellant: No, sir.
Court: Do you understand that if you plead guilty to this offense, you're making a complete admission that you committed the allegations?
Appellant: Yes, sir.

**{¶20}** We find that neither appellant's learning disability, nor his other responses during the colloquy with the trial court indicate that he did not understand the nature or consequences of the plea.

## CONCLUSION

**{¶21}** Based on the totality of the circumstances, we find that appellant's plea was voluntary, knowing, and intelligent.  Therefore, the trial court complied with Crim.R. 11(C) before accepting appellant's plea.  Accordingly, we overrule appellant's sole assignment of error, and affirm the trial court's judgment entry of conviction.

**JUDGMENT AFFIRMED.**

## <u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Hess, J.: Concur in Judgment and Opinion.


For the Court,


BY: _____
Kristy S. Wilkin, Judge


**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**