[Cite as *State v. Phillips*, 2025-Ohio-1235.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 23AP-147 |
| v. | : | (C.P.C. No. 19CR-5237) |
| Conrad V. Phillips, V, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

---

D E C I S I O N

Rendered on April 8, 2025

---

**On brief:** [*Shayla D. Favor*], Prosecuting Attorney, and *Seth L. Gilbert*, for appellee. **Argued:** *Paula M. Sawyers.*

**On brief:** *Mitchell A. Williams,* Franklin County Public Defender, and *Timothy E. Pierce*, for appellant. **Argued:** *Timothy E. Pierce.*

---

APPEAL from the Franklin County Court of Common Pleas

BOGGS, J.

{¶ 1} Defendant-appellant, Conrad V. Phillips, V, appeals the judgment of the Franklin County Court of Common Pleas, which revoked intervention in lieu of conviction ("ILC"), convicted Phillips for improper handling of firearms in a motor vehicle and carrying a concealed weapon, and sentenced Phillips for those offenses. For the following reasons, we reverse the trial court's judgment.

## I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2} After being found in possession of a loaded firearm while stopped at a sobriety checkpoint, Phillips was indicted in October 2019 for one count of improperly handling firearms in a motor vehicle in violation of R.C. 2923.16 and one count of carrying

a concealed weapon in violation of R.C. 2923.12, both fourth-degree felonies.[1] Phillips filed a motion for ILC. On September 2, 2020, Phillips entered a guilty plea to both indicted offenses for purposes of the ILC program. The trial court accepted Phillips's guilty plea and granted his request for ILC on the joint recommendation of counsel.

{¶ 3} As part of its colloquy with Phillips before accepting his guilty plea, the trial court stated that it was required to ascertain that Phillips knew and understood the constitutional rights he was giving up by pleading guilty. The court questioned Phillips with respect to his understanding that, by pleading guilty, he was giving up the right to a jury or bench trial, the right to force the state to prove each element of each offense beyond a reasonable doubt, "the right to present any defenses to the charges against [him,]" the right to have his attorney cross-examine the state's witnesses, the right to testify on his own behalf or to remain silent without his silence being held against him, and the right to appeal certain issues. (Sept. 2, 2020 Tr. at 10.) Phillips stated that he understood and that he was "freely and voluntarily waiv[ing] those rights and choos[ing] to have the Court accept" his guilty plea. *Id.* at 11.

{¶ 4} The trial court explained that, because it was granting Phillips's request for ILC, it would "not make a finding of guilt during the intervention period," *id.* at 13, but would "hold the plea and give [Phillips] an opportunity to complete the ILC program," *id.* at 7. It warned Phillips, however, that if he violated the terms of the ILC, he would "come back to [the trial judge] for sentencing then on this plea." *Id.*

{¶ 5} After accepting Phillips's guilty plea, the trial court stayed this case and ordered Phillips to serve "an indefinite period of rehabilitation for not less than one year and not more than five years under the control and supervision of the Franklin County Common Pleas Court probation department . . ., as if [he] were on community control." *Id.* at 14. The trial court also filed a written entry for ILC, which set out conditions included in Phillips's intervention plan. Those conditions included that he abstain from the use of illegal drugs and alcohol for the period of supervision, that he submit to regular random drug and alcohol tests, that he undergo treatment as determined by the probation department, that he participate in outpatient drug and substance abuse counseling, that he

---

[1] The indictment identifies the defendant as Conrad V. Phillips, IV. But from the issuance of a summons on, the case caption and all documents refer to the defendant as Conrad V. Phillips, V.

attend Narcotics Anonymous meetings, that he participate in psychotherapy to address Attention-Deficit/Hyperactivity Disorder, that he submit to a psychiatric medication consultation, and that he submit to urine screens.

{¶ 6} More than two years later, on December 7, 2022, Phillips's probation officer filed with the trial court a statement of violations, in which she stated that Phillips was in violation of the terms of his supervision by not attending two to three Narcotics Anonymous meetings per week, as recommended at his behavioral health evaluation, and by submitting a urine screen on November 18, 2022 that tested positive for marijuana. Phillips appeared with newly appointed counsel for a revocation hearing on January 19, 2023, but the hearing was then continued to February 2, 2023. Phillips was taken into custody on January 19, 2023 and held in jail for 15 days until the rescheduled hearing.

{¶ 7} At the hearing on February 2, 2023, Phillips stipulated to the probation officer's statement of violations, which the trial court accepted along with Phillips's entry of guilty plea from September 2, 2020. The court did not engage with Phillips in another plea colloquy, stating, "[w]e went through this back at the time of him being placed on ILC." (Feb. 2, 2023 Tr. at 3.) The court found Phillips guilty on both counts and moved forward with sentencing.

{¶ 8} As to sentencing, the trial court rejected defense counsel's request that the court terminate the case for time served, stating, "[t]erminating you unsuccessfully with only 15 days of jail time credit" would be to "reward[] you for bad behavior." *Id.* at 9. The judge stated, "you got the benefit of ILC for two years because you said you needed help and then you didn't do what you were supposed to do." *Id.* The court found Phillips an inappropriate candidate for probation, "because you're not going to do what you don't think you need to do." *Id.* at 9-10. Ultimately, the court imposed the following sentence:

> I am going to give you a local sanction of 45 days --you have 30 more days to serve -- and then probation will be -- I'll put you on probation for that term of 45 days. Then upon the completion of 45 full days in jail, your probation will be terminated unsuccessfully and you will be released from incarceration.

*Id.* at 10. The court ordered the gun involved in Phillips's offenses confiscated and destroyed.

{¶ 9}   On March 6, 2023, after Phillips completed his remaining 30 days of jail time, the trial court discharged him from community control unsuccessfully, stating, "The Court finds [Phillips] has not complied with the terms of [his] community control.  Accordingly, [Phillips] is discharged from Community Control."  (Mar. 6, 2023 Entry Terminating Community Control Unsuccessfully.)

{¶ 10} Phillips filed a timely appeal and asserts three assignments of error for our review:

> **First Assignment of Error:** The trial court erred by entering a judgment of conviction against [Phillips] based upon guilty pleas that were not knowing, intelligent, and voluntary, and were obtained in violation of Rule 11 of the Ohio Rules of Criminal Procedure.
>
> **Second Assignment of Error:** The trial court abused its discretion when it terminated [Phillips's] participation in intervention in lieu of conviction, enforced his plea, and sentenced him in accordance with R.C. 2929 *et seq*.
>
> **Third Assignment of Error:** The trial court abused its discretion when it terminated as "unsuccessful" [Phillips's] community control even though [Phillips] complied with the court's community control condition that he serve an aggregate total of 45 days in the county jail.

## II.  ANALYSIS

{¶ 11} We begin by addressing Phillips's first assignment of error, in which he challenges his September 2, 2020 guilty plea.  The state does not dispute that Phillips is entitled to challenge his plea now, as the trial court's entry granting Phillips's request for ILC in September 2020 was not a conviction or sentence and was therefore not a final order subject to immediate appeal.  *See State v. Yontz*, 2022-Ohio-2745.

{¶ 12} "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily.  Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution."  *State v. Engle*, 74 Ohio St.3d 525, 527 (1996).  To ensure that pleas conform to those standards, a trial judge must engage the defendant in a colloquy before accepting a guilty or no-contest plea. *State v. Clark*, 2008-Ohio-3748, ¶ 26.  Crim.R. 11(C) requires a trial court to determine in that colloquy whether the defendant "is fully informed

of his or her rights and understands the consequences of his or her guilty plea." *State v. Barker*, 2011-Ohio-4130, ¶ 10. Crim.R. 11(C) states, in pertinent part, as follows:

> **(2)** In felony cases the court . . . shall not accept a plea of guilty or no contest without first addressing the defendant personally . . . and doing all of the following:
>
> **(a)** Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> **(b)** Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> **(c)** Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 13} We are concerned here particularly with Crim.R. 11(C)(2)(c), the goal of which is to ensure the defendant's understanding that, after entering a plea, the defendant will not be able to exercise certain constitutional rights. *State v. Miller*, 2020-Ohio-1420, ¶ 19. When a trial court fails to explain to the defendant those constitutional rights listed in Crim.R. 11(C)(2)(c), a guilty or no-contest plea will be "invalid 'under a presumption that it was entered into involuntarily and unknowingly.' " *Clark* at ¶ 31, quoting *State v. Griggs*, 2004-Ohio-4415, ¶ 12.

{¶ 14} A trial court must strictly comply with Crim.R. 11(C)(2)(c) and orally advise a defendant before accepting a felony plea that the plea waives the constitutional rights enumerated therein. *State v. Veney*, 2008-Ohio-5200, syllabus. The court "cannot simply rely on other sources to convey th[o]se rights to the defendant," *id.* at ¶ 29, and " 'a signed written waiver of constitutional rights does not effect a legal waiver in the absence of the necessary colloquy between the court and the defendant,' " *State v. Truitt*, 2011-Ohio-2271, ¶ 10 (10th Dist.). To strictly comply with Crim.R. 11(C)(2)(c), the court must advise the

defendant of each of the enumerated constitutional rights that the defendant is giving up by pleading guilty or no-contest. *Miller* at ¶ 17. The court need not recite the language in Crim.R. 11(C)(2)(c) verbatim to strictly comply with the rule, but the record must show "that the trial court explained or referred to the right in a manner reasonably intelligible to that defendant." *State v. Ballard*, 66 Ohio St.2d 473, 480 (1981).

{¶ 15} "A guilty plea is *constitutionally infirm* when the defendant is not informed in a reasonable manner at the time of entering his guilty plea of his rights to a trial by jury and to confront his accusers, and his privilege against self-incrimination, and his right of compulsory process for obtaining witnesses in his behalf." (Emphasis added.) *Id.* at 478. No showing of prejudice is required. *Miller* at ¶ 17. Thus, as we have previously stated, a trial court's failure to advise a defendant of even one of the constitutional rights listed in Crim.R. 11(C)(2)(c) renders the plea invalid. *State v. Ellis*, 2015-Ohio-3438, ¶ 5 (10th Dist.), citing *Veney* at ¶ 29-30.

{¶ 16} The trial court here solicited acknowledgements from Phillips that, by pleading guilty, he would be waiving the "right to have a jury trial," the "right to have [his] attorney cross-examine and confront any witnesses the State would bring to testify against [him]," the "right to force the State to prove beyond a reasonable doubt each and every element of each offense," and the "right to . . . remain silent and [that his] silence could not be held against [him]." (Sept. 2, 2020 Tr. at 10.) With respect to those rights, the trial court strictly complied with Crim.R. 11(C)(2)(c). But the trial court did not mention in its colloquy Phillips's Sixth Amendment right to compulsory process to compel witnesses to testify on his behalf. Instead, it asked, "do you understand that you are waiving your right to present any defenses to the charges against you," and Phillips replied affirmatively. *Id.*

{¶ 17} Phillips argues that the trial court's failure to inform him during the colloquy of his constitutional right to compulsory process to compel witnesses to testify on his behalf renders his guilty plea invalid. On the other hand, pointing to the trial court's advisement that Phillips would be waving the right "to present any defenses," the state argues that the trial court did not completely fail to discuss with Phillips his right to compulsory process. *Id.* The state therefore maintains that we may look to the written plea agreement to ensure that Phillips was aware of and knowingly, intelligently, and voluntarily waived his right to compulsory process. In the written plea form that Phillips executed, Phillips acknowledged,

"by pleading 'Guilty,' I waive a number of important and substantial constitutional . . . rights, which include . . . the right . . . to have compulsory subpoena process for obtaining witnesses in my favor." (Entry of Guilty Plea at 1.) Phillips acknowledged during the September 2, 2020 plea hearing that he had signed and understood the written plea form and that his attorney had answered all his questions about it.

{¶ 18} The state relies on *State v. Barker*, 2011-Ohio-4130, to argue that this court may look to the totality of the circumstances, including the written plea form, to determine whether Phillips was fully informed of the right to compulsory process. Like here, the issue in *Barker* was whether the trial court had complied with Crim.R. 11(C)(2)(c) by informing the defendant of his constitutional right to compulsory process. The trial court had informed Barker that, by entering a no-contest plea, he would be giving up the "right to call witnesses to speak on [his] behalf." *Id.* at ¶ 4. Barker signed a written plea form that stated, " 'I understand by entering this plea I give up my right to a jury trial or court trial, where I could see and have my attorney question witnesses against me, *and where I could use the power of the court to call witnesses to testify for me.*' " (Emphasis in original.) *Id.* at ¶ 5.

{¶ 19} On appeal, Barker argued that his plea was invalid because the trial court had not fully complied with Crim.R. 11(C)(2)(c), and the Eighth District Court of Appeals agreed. The Supreme Court of Ohio, however, did not agree, and it reversed the Eighth District's judgment. The Supreme Court rejected Barker's argument, adopted by the Eighth District, that the trial court's explanation that Barker would be giving up the right " 'to call witnesses' " did not satisfy the mandate of Crim.R. 11(C)(2)(c) with respect to the right of compulsory process. *Id.* at ¶ 16. The Supreme Court considered definitions of the verb "call" from various legal and standard dictionaries, as well as the use of that word in "everyday parlance," *id.* at ¶ 18, and it concluded that "to call" commonly means to summon or compel someone's appearance. *Id.* at ¶ 17-20. It held, "informing the defendant that he had the 'right to call witnesses to speak on [his] behalf' was a reasonably intelligible explanation to the defendant of his constitutional right to compulsory process and allowed the defendant to make a voluntary and intelligent decision whether to plead no contest." *Id.* at ¶ 20.

{¶ 20} Although arguably not necessary to its opinion, having already concluded that the trial court had strictly complied with Crim.R. 11(C)(2)(c), the Supreme Court went

on to address the Eighth District's holding that it could not consider the written plea agreement to determine whether the trial court satisfied the mandate in Crim.R. 11(C)(2)(c).  The Eighth District had relied on the statement in *Veney* that a trial court cannot "simply rely" on sources other than plea colloquy to convey to the defendant the constitutional rights listed in Crim.R. 11(C)(2)(c).  *Veney*, 2008-Ohio-5200, at ¶ 29.  But the Supreme Court distinguished *Veney* on its facts.  It stated, "because the trial court [in *Veney*] had completely 'failed to orally inform' the defendant of the right in question, . . . the court could not 'simply rely on other sources to convey these rights.' " *Barker* at ¶ 23, quoting *Veney* at ¶ 29.  Having found that the trial court in *Barker* had addressed the right to compulsory process in its oral colloquy, the Supreme Court stated that the Eighth District was entitled to "consider additional record evidence to reconcile any alleged ambiguity" in the colloquy. *Id*. at ¶ 24.  It held, when a trial court addresses all constitutional rights listed in Crim.R. 11(C)(2)(c) in a plea colloquy, "an alleged ambiguity [in the] colloquy may be clarified by reference to other portions of the record, including the written plea, in determining whether the defendant was fully informed of the right in question." *Id*. at ¶ 25.

{¶ 21} The trial court here did not explain to Phillips that he had the right to compulsory process or, in layman's terms, to subpoena witnesses on his behalf.  Nor did the trial court explain to Phillips, like the trial court explained to Barker, that he was giving up the right to call witnesses on his behalf, which according to the Supreme Court at least ambiguously touched on the right to compulsory process.  Instead, the trial court here even more generally told Phillips only that he was giving up the right "to present any defenses to the charges against [him]." (Sept. 2, 2020 Tr. at 10.)  Nevertheless, the state contends that, with that language, the trial court informed Phillips of the right to compulsory process.  We disagree.

{¶ 22} In support of its contention that the trial court's warning that Phillips was giving up the right to present any defenses informed Phillips that he was giving up the right to compulsory process, the state cites *Lakewood v. Papadelis*, 32 Ohio St.3d 1 (1987), in which the Supreme Court of Ohio stated:

> "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to

> confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law."

*Id.* at 4-5, quoting *Washington v. Texas*, 388 U.S. 14, 19 (1967). Neither *Lakewood* nor *Washington*, however, suggests that the specific constitutional right to compulsory process and the broader constitutional right to present a defense are, for all purposes, one and the same. As neither case involved application of Crim.R. 11 or a similar rule requiring a court to advise a defendant of the Sixth Amendment right to compulsory process, neither holds that a court adequately informs a defendant of the right to compulsory process when it informs the defendant of the right to present a defense. *Lakewood* did not involve the right to compulsory process, but the Supreme Court quoted *Washington* to conclude that a discovery sanction that precluded the defendant from presenting witness testimony from anyone other than himself may infringe on the defendant's Sixth Amendment right to present a defense. *Lakewood* at 5. *Washington* presented the question whether the Sixth Amendment right to compulsory process was a fundamental right that applied to state courts through the Fourteenth Amendment, a question the United States Supreme Court answered in the affirmative. *Washington* at 14-15.

{¶ 23} The United States Supreme Court has recognized that, "[w]hether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.' " (Internal citations omitted.) *Crane v. Kentucky*, 476 U.S. 683, 690 (1986), quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984). The Sixth Amendment states:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defen[s]e.

The Sixth Amendment right to compulsory process, like the rights to confront witnesses against him, and to the assistance of counsel, aids a defendant in exercising the overarching

right to present a complete defense. However, while advising a defendant of the right to compulsory process to subpoena witnesses and compel them to testify on the defendant's behalf necessarily, if vaguely, advises the defendant of the right to present a defense (because absent the right to present a defense the right to compel witnesses to testify would be meaningless), the converse does not hold true. Advising a defendant that he or she has the right to present a defense to criminal charges does not reasonably inform the defendant that he has the right to utilize the court's subpoena power to compel witnesses to appear and testify on his behalf.

{¶ 24} The Eighth District Court of Appeals has on multiple occasions addressed what constitutes strict compliance with Crim.R. 11(C)(2)(c), as it relates to the right to compulsory process. For example, it has concluded that a trial court does not sufficiently advise a defendant of the right to compulsory process by advising the defendant that he has " 'the right to bring in witnesses to this courtroom to testify for your defense[.]' " *State v. Senich*, 2003-Ohio-5082, ¶ 33 (8th Dist.); *State v. Rosenberg*, 2005-Ohio-101, ¶ 14 (8th Dist.). In *Senich*, the court reasoned, "the logical import of the court's notice" that the defendant had the right to bring in witnesses to testify for his defense "is that the defendant could present such witnesses *as he could secure through his own efforts*." (Emphasis added.) *Id.* at ¶ 33; *see also State v. Tucci*, 2002-Ohio-6903, ¶ 8, 14 (7th Dist.) (court's advisement that "your attorney would present evidence on your behalf" could not "be construed to explain the right to subpoena witnesses by compulsory process"). On the other hand, the Eighth District has found strict compliance with Crim.R. 11(C)(2)(c) when a trial court has informed the defendant "that witnesses could be 'forced,' 'subpoenaed,' 'compelled,' 'summoned,' or 'required' to appear." *State v. Carty*, 2018-Ohio-2739, ¶ 19 (8th Dist.). In other words, the court has focused on whether the trial court has informed the defendant of the ability to obtain *compulsory* testimony. *See, e.g., State v. Wilson*, 2004-Ohio-499, ¶ 16 (8th Dist.) (trial court "must inform a defendant that it has the power to force, compel, subpoena, or otherwise cause a witness to appear and testify on the defendant's behalf").

{¶ 25} The Eighth District's focus on the compulsory nature of the process afforded a defendant under the Sixth Amendment is consistent with the Supreme Court of Ohio's focus in *Barker*. Important to the Supreme Court's decision in *Barker* was its

determination that the trial court's advisement of the "the right *to call* witnesses" conveyed the idea that the defendant was able to summon witnesses and require them to appear and to testify. 2011-Ohio-4130, at ¶ 20. It was for that reason—gleaned from the plain and ordinary meaning of the word "call"—that the court concluded the trial court's advisement constituted a reasonably intelligent explanation of the defendant's right to compulsory process. *Id.*

{¶ 26} This case is distinguishable from *Barker*, in which the trial court informed the defendant he would be giving up the right "to call" witnesses to testify on his behalf. Here, the trial court did not mention Phillips's ability to present witness testimony at all, let alone his ability to use the trial court's subpoena power to obtain such testimony. It informed him only that, by pleading guilty, he would be giving up the right to present any defenses. While the Supreme Court extrapolated from the advisement of the right to call witnesses in *Barker* an advisement of the right to compulsory process, we may not make that leap from the advisement of a right to "present any defenses." (Sept. 2, 2020 Tr. at 10.) *Barker* would apply only if the trial court had informed Phillips of his Sixth Amendment right to compulsory process in a manner that did not conform to the exact language of Crim.R. 11(C)(2)(c), but that nevertheless communicated its meaning to Phillips in a reasonably intelligible manner. *See State v. Johnson*, 2016-Ohio-7945, ¶ 13 (10th Dist.). We conclude that the trial court did not do so in this case.

{¶ 27} Unlike in *Barker*, the trial court did not address all the constitutional rights listed in Crim.R. 11(C)(2)(c) during the oral colloquy with Phillips, as it did not communicate to Phillips his right to compulsory process. Therefore, we may not consider Phillips's written plea in determining whether the trial court complied with Crim.R. 11(C)(2)(c). *See Barker*, 2011-Ohio-4130, at ¶ 24. "The omission by the trial court of any discussion or dialogue with the accused concerning the constitutionally protected right to compel the attendance of witnesses on his behalf necessitates a conclusion that the trial court committed reversible error by such an omission that cannot be cured by a written waiver of that right." *State v. Green*, 2004-Ohio-6371, ¶ 16 (7th Dist.). The trial court's failure to advise Phillips of his Sixth Amendment right to compulsory process during the plea colloquy constitutes plain error renders Phillips's guilty plea invalid. *See Veney*, 2008-

Ohio-5200, at ¶ 24, citing *Ballard*, 66 Ohio St.2d at 476-477. Accordingly, we sustain Phillips's first assignment of error.

{¶ 28} In light of our resolution of Phillips's first assignment of error, invalidating his guilty plea, it is not necessary to address Phillips's second and third assignments of error, which concern the trial court's revocation of ILC and sentencing. We therefore overrule those assignments of error as moot.

## III. CONCLUSION

{¶ 29} Having determined that Phillips's plea is invalid because the trial court did not strictly comply with Crim.R. 11(C)(2)(c) before accepting it, we vacate the guilty plea, reverse Phillips's convictions, and remand this matter to the trial court for further proceedings.

*Judgment reversed*;
*cause remanded.*

BEATTY BLUNT and MENTEL, JJ., concur.

_____